Mary Beth Kelly, J.
In this joint and several liability medical malpractice case, defendant, Dr. Martin Tuma, seeks a reduction of the final judgment rendered against him by the amount of his codefendants’ settlement. This case therefore concerns the interplay between the common-law setoff rule, whereby a jointly and severally liable tortfeasor is entitled to a setoff from any adverse verdict in the amount of the cotortfeasor’s settlement, and the noneconomic damages cap of MCL 600.1483, which limits a medical malpractice plaintiffs recovery of noneconomic damages. Specifically, we must decide whether the Legislature intended to abrogate the common-law setoff rule and, if not, the order in which the setoff rule and the noneconomic damages cap of MCL 600.1483 apply to a jury’s verdict. Both the circuit court and Court of Appeals held, pursuant to Markley v Oak Health Care Investors of *6 Coldwater, Inc,[1] that the common-law setoff rule applies and that the setoff must be applied to the jury’s verdict before application of the cap on noneconomic damages.
We agree that Markley was correctly decided and thus hold that the Legislature did not abolish the common-law setoff rule in the context of joint and several liability medical malpractice cases. We affirm the Court of Appeals in this regard and further clarify that where the Legislature has retained principles of joint and several liability, the common-law setoff rule applies. The lower courts’ sequencing of the setoff and the noneconomic damages cap, however, results in an outcome contrary to the Legislature’s requirement that medical malpractice plaintiffs “shall not” recover more noneconomic losses than the amount determined by MCL 600.1483. Rather, the Legislature has exercised its authority to limit a medical malpractice plaintiffs recoveiy by capping noneconomic losses and requiring the reduction of economic losses by the amounts paid by collateral sources. Because application of the setoff to the jury’s verdict can result in a recovery beyond those statutorily mandated damages limitations, we further hold that a joint tortfeasor’s settlement must be set off from the final judgment after application of the noneconomic damages cap of MCL 600.1483, as well as the collateral source rule. We therefore reverse that portion of the Court of Appeals’ judgment affirming the circuit court’s application of the common-law setoff rule.
I. FACTS AND PROCEDURAL HISTORY
In September 2001, plaintiff, Myriam Velez, filed suit against Detroit Receiving Hospital, Harper Hospital, *7 and Drs. Lawrence Schwartz and Martin Tuma, alleging that their failure to timely operate on her leg necessitated its amputation below the knee. After plaintiff filed her notice of intent to sue, the hospitals entered into a settlement agreement with plaintiff in which those defendants paid plaintiff a total of $195,000. After the settlement, plaintiffs lawsuit was dismissed by stipulation but without prejudice with respect to Tuma, who was not a part of the settlement agreement.
Plaintiff then filed a new complaint against defendant Tuma in January 2004, raising the same allegations against defendant.[2] After a four-day jury trial, the jury found defendant to be professionally negligent and returned a $1,524,831.86 verdict in plaintiffs favor. As required by MCL 600.1483(2), the jury itemized the verdict, separating it into past and future economic and noneconomic damages. The jury awarded plaintiff a total of $124,831.86 in economic damages and a total of $1.4 million in noneconomic damages.[3]
Before the circuit court entered a final judgment in plaintiffs favor, defendant requested that the circuit court apply the noneconomic damages cap to the jury’s verdict and then subtract codefendants’ $195,000 settlement from the final judgment. Plaintiff objected, relying on Markley, and argued that the circuit court was required to subtract codefendants’ settlement from the jury’s unadjusted “verdict.”[4] The circuit court denied defendant’s request, citing Markley for the propo *8 sition that codefendants’ settlement had to be applied to the jury’s unadjusted “verdict,” as opposed to the “judgment.” The court agreed with plaintiffs interpretation of Markley.
The question to the Court is whether or not I believe that Markley... stand[s] for the proposition that the verdict is subject to the set off. Or whether the judgment is subject to the set off.
The Court believes that Markley says verdict. I don’t know what they meant, but I’ll take it literally and we will apply it to the verdict. I will absolutely concur that that will result in a plaintiff receiving more money than the cap amount.
Thereafter, the circuit court entered a judgment awarding plaintiff $394,200, which is the amount of the noneconomic damages cap in this case.[5] To calculate this amount, the circuit court first subtracted codefendants’ $195,000 settlement from the jury’s total unadjusted verdict of $1,524,831. Because plaintiff’s economic damages had been satisfied through collateral sources, the circuit court applied the collateral source rule and reduced plaintiff’s economic damages to zero.[6] Finally, the circuit court reduced the remaining noneconomic damages to the amount of the statutory cap on noneconomic damages, $394,200. The circuit court entered a final judgment for plaintiff in *9 this amount.[7] Including the prior settlement amount, plaintiffs total recovery was $589,200.
In the Court of Appeals, defendant argued that the circuit court had erred by applying the setoff to the jury’s unadjusted verdict rather than to the amount of the final judgment after applying the noneconomic damages cap. The Court of Appeals, however, affirmed the circuit court’s decision to apply the setoff to the unadjusted verdict.[8] The Court first reasoned that the common-law setoff rule remained applicable in medical malpractice cases involving joint and several tortfeasors and that the rule should be applied so that a plaintiff will not be overcompensated for his or her actual loss. Turning to the question whether the setoff is to be applied to a jury’s verdict or the final judgment after application of the noneconomic damages cap, the appeals panel could “discern no reason why the same principles that applied to the [now repealed] statutory right to setoffs [wherein prior settlements were set off against the verdict] should not apply to the common- *10 law right to setoffs . . . .”[9] Without addressing the language of the statute capping noneconomic damages, the Court of Appeals reasoned that “ [i]n cases where joint and several liability is imposed, the trier of fact’s determination of damages sets the limit regarding the amount a plaintiff can recover for his or her loss.”[10] The Court thus concluded “that the application of the setoff rule to the jury verdict [which comprises a plaintiffs actual loss], rather than the final judgment, is proper.”[11]
Defendant applied for leave to appeal in this Court, and plaintiff filed a cross-appeal. Initially, we denied both applications,[12] but we later granted defendant’s motion for reconsideration and granted leave to appeal, limited to the issue “whether the Court of Appeals correctly held that the setoff amount in this case was properly set off against the jury verdict, before application of the noneconomic damages cap of MCL 600.1483 and calculation of the final judgment.”[13] After hearing oral argument on that limited issue, we sua sponte reconsidered plaintiffs cross-application and granted leave to cross-appeal to consider “whether Markley ... correctly decided that the common-law setoff rule applies in medical malpractice actions where joint and several liability is imposed.”[14]
*11 II. STANDARD OF REVIEW
The questions presented in these appeals are questions of law that we review de novo.[15] To the extent we must interpret the meaning of applicable statutes, our review is also de novo.[16]
III. EXISTENCE OF COMMON-LAW SETOFF RULE
Plaintiff argues that the Legislature abrogated the common-law setoff rule and thus any setoff of codefendants’ settlement award is not warranted. In support, plaintiff posits that in 1995 PA 161, the Legislature clearly intended to abrogate the common-law rule when it repealed former MCL 600.2925d(b), as added by 1974 PA 318, which had codified the setoff rule and provided that a settlement “reduces the claim against the other tort-feasors to the extent of any amount stipulated by the release .. . .”
The common law remains in force until “changed, amended or repealed.”[17] Whether the Legislature has abrogated, amended, or preempted the common law is a question of legislative intent.[18] We will not lightly presume that the Legislature has abrogated the common law.[19] Nor will we will extend a statute by implication to abrogate established rules of common law.[20] “Rather, the Legislature ‘should speak in no uncertain *12 terms’ when it exercises its authority to modify the common law.”[21]
We cannot conclude that the Legislature intended to abolish the common-law setoff rule in the context of joint and several liability medical malpractice cases. While the pertinent statutes are silent with respect to the application of the common-law setoff rule, we cannot agree with plaintiff that the repeal of the statutory setoff, former MCL 600.2925d(b), by 1995 PA 161 demonstrates a clear intent to abrogate the common-law rule. Plaintiffs argument ignores the fact that the repeal of former MCL 600.2925d(b) was but one part of comprehensive tort-reform legislation and that there is no conflict between the common-law rule and the current legislation that would prevent the setoffs application. Those 1995 reforms abolished joint and several liability in most contexts and created an allocation-of-fault system in which each tortfeasor is liable only for the portion of the total damages that reflects that tortfeasor’s percentage of fault.[22] Because a system of several liability already incorporates the fault of all tortfeasors in establishing every individual tortfeasor’s proportion of fault, there is no danger that the plaintiff will be overcompensated for the injury by the failure to set off the amount of another tortfeasor’s settlement.
The same comprehensive tort-reform legislation, however, also specifically retained “joint and several liability” in medical malpractice cases under MCL 600.6304(6)(a) where, as in the present case, the plain *13 tiff is determined to be without fault.[23] For reasons we explain, the Legislature’s unambiguous intent to maintain joint and several liability in this context also evinces a clear intent to retain the common-law setoff rule in joint and several liability medical malpractice cases.
The term “joint and several” liability, as used in MCL 600.6304(6)(a), is a technical legal term. It has a long-acquired meaning that is well established in our jurisprudence: “[]Where multiple tortfeasors caused a single or indivisible injury, the injured party [may] either sue all tortfeasors jointly or he [may] sue any individual tortfeasor severally, and each individual tortfeasor [is] liable for the entire judgment. .. .”[24] Consistent with our rules of construction, “technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.”[25] The Legislature’s use of the term “joint and several” liability, therefore, indicates a plain intent to adopt that term’s technical legal meaning.
Inherent in the meaning of joint and several liability is the concept that a plaintiffs recovery is limited to one compensation for the single injury.[26] Because in some *14 instances a jointly and severally liable tortfeasor settles before trial, the common-law setoff rule is necessary to ensure that the plaintiff does not recover more than a single recovery for the single injury. The common-law setoff rule entitles the remaining tortfeasors, who are still liable for the entire injury, to set off the amount of the cotortfeasor’s settlement from any verdict rendered against them.[27] By reiterating that liability in most medical malpractice cases is joint and several, the Legislature thus retained the common-law setoff rule. When understood in this way, the purpose of the Legislature’s repeal of the statutory setoff was not to abrogate the common-law setoff rule, but to acknowledge that a setoff does not apply in actions that involve several liability only.
The Court of Appeals’ decision in Markley is consistent with this reasoning. There, the defendant sought a setoff against a jury verdict in the amount of the joint codefendant’s settlement. The Court of Appeals rejected the circuit court’s reasoning that the Legislature’s repeal of former MCL 600.2925d(b) was intended to abrogate any common-law right to a setoff. Instead, the appeals court reasoned:
[I]t is logical to conclude that common-law setoff in joint and several liability cases remained the law, where the new legislation was silent, where application of the common-law rule does not conflict with any current statutes con *15 cerning tort law, and where a plaintiff is conceivably overcompensated for its injury should the rule not be applied. Considering the general nature and tone of tort reform legislation, we conclude that the Legislature did not intend to allow recovery greater than the actual loss in joint and several liability cases when it deleted the relevant portion of [MCL 600.2925d], but instead intended that common-law principles limiting a recovery to the actual loss would remain intact.[28]
Thus, the Court of Appeals held that “the principle of one recovery and the common-law rule of setoff, in the context of joint and several liability cases, continue to be the law in Michigan.”[29]
After Markley, this Court in Kaiser v Allen[30] considered whether principles of joint and several liability and the common-law setoff rule applied in vehicle-owner vicarious-liability cases. After the jury returned a verdict in the plaintiffs favor, the defendant sought a setoff in the amount of his codefendant’s settlement, which would reduce the plaintiffs award to zero. Because there can be no allocation of fault in vicarious-liability cases and there exists no amount of damages that belong to the vehicle owner separately from the negligent operator, we held that “[t]he tort-reform statutes do not apply to . . . vehicle-owner vicarious-liability cases .... Therefore, the common-law setoff rule remains the law in Michigan for vehicle-owner vicarious-liability cases.”[31]
*16 While the present case is factually dissimilar from Kaiser, the principles espoused in Kaiser nonetheless support our interpretation of the tort-reform statutes; mainly, that where the Legislature has retained joint and several liability, the common-law setoff rule remains intact. Indeed, as the Court of Appeals acknowledged in Markley, we are aware of no conflicting provision that would prevent the setoffs application, and plaintiff has identified none. Given our reasoning and our decision in Kaiser, we cannot hold that Markley was wrongly decided, as plaintiff urges. Accordingly, we hold that the common-law setoff rule remains the law in joint and several liability medical malpractice cases. We further clarify, consistent with our decision in Kaiser, that where the Legislature has specifically retained the technical common-law term “joint and several liability,” the common-law setoff rule remains applicable.
IV APPLICATION OF COMMON-LAW SETOFF RULE
Our conclusion that the common-law setoff rule remains applicable in joint and several liability cases does not end our analysis. Rather, we must address the issue of the sequence in which to apply the common-law setoff rule and the statutory cap on noneconomic damages to the jury’s verdict. We therefore examine the interplay between the common-law rule and MCL 600.1483. We are cognizant that we are the stewards of the common law and that the Legislature is presumed to be aware of the common law when enacting legislation.[32] Our function in construing statutory language is to effectuate the Legislature’s intent.[33] Plain and clear language is the best indicator of that intent, and such *17 statutory language must be enforced as written.[34] Further, a statute in derogation of the common law will not be construed to abrogate the common law by implication, but if there is any doubt, the statute is to be given the effect that makes the least change in the common law.[35]
We agree with defendant that the lower courts erred by applying the setoff before applying the noneconomic damages cap, thereby allowing plaintiff to recover a total judgment beyond what Michigan law permits. While the Court of Appeals properly recognized that the common-law setoff rule applies in this case and is necessary to ensure that a plaintiff is not overcompensated for his or her injury, the Court erred by failing to address how the mandatory limitation on noneconomic damages affects application of the setoff.
As noted, MCL 600.1483(1) limits a plaintiffs damages for “noneconomic losses recoverable” and provides, in part:
In an action for damages alleging medical malpractice by or against a person or party, the total amount of damages for noneconomic loss recoverable by all plaintiffs, resulting from the negligence of all defendants, shall not exceed $[394,200] ... .[36]
This language mandates an absolute cap on all available noneconomic losses: a medical malpractice plaintiffs “total amount” of noneconomic*damages “recoverable” “shall not exceed” the statutory cap. Use of the term “recoverable,” giving it its plain meaning, denotes non- *18 economic losses that are capable of being recovered, which necessarily includes recovery through settlements, jury verdicts, or arbitration.[37] Because the term “total” modifies “amount of damages for noneconomic loss recoverable,” it makes clear that all such sums recovered “shall not exceed” the cap. The Legislature, through the unambiguous language of MCL 600.1483(1), has then determined that a plaintiffs actual loss — and thus full compensation — for noneconomic losses caused by the single injury may be less than what a jury awards and may not in total exceed the statutory limit.[38]
Despite the unequivocal language of MCL 600.1483 limiting noneconomic damages, the statute is silent with respect to when the cap is to be applied both generally and in relation to the common-law setoff.[39] And while the common-law setoff rule is traditionally *19 applied to a jury’s verdict, we do not view the statutory silence or the traditional application of the common-law setoff to be dispositive of the sequencing issue. Rather, the clear legislative directive of MCL 600.1483, when considered in juxtaposition with the purpose of the common-law setoff rule, provides the necessary guidance. Because a medical malpractice plaintiff cannot by operation of law recover more noneconomic damages than the statutory limit, it follows that a plaintiffs full recovery of noneconomic losses for the single injury— assuming the jury verdict exceeds the cap — is legislatively predetermined to be limited to the statutory amount. If a plaintiff has been partially compensated through a prior settlement from a jointly and severally liable tortfeasor, then the common-law setoff rule, consistent with its purpose and the statute, must be applied to ensure that the plaintiff is not compensated beyond statutorily permissible limits. To achieve this result, the *20 settlement must be subtracted from a jury verdict after application of the noneconomic damages cap, as well as the collateral source rule; otherwise, the plaintiff could recover more than his or her full compensation, that is, the plaintiff could recover the settlement amount, plus the amount of the cap and the amount of statutorily permissible economic damages, if any.[40]
Yet this is exactly what the lower courts did in this case. Neither the circuit court nor the Court of Appeals recognized that the Legislature has statutorily limited a medical malpractice plaintiffs recovery and that a setoff must be applied to ensure that the plaintiff does not recover an amount more than that which the Legislature has fixed by statute. Instead, the lower courts ignored the mandate of MCL 600.1483 and measured plaintiffs “actual loss,” or full compensation, as the jury’s verdict. This erroneous reasoning led to the legally incorrect conclusion that plaintiffs recovery for her single injury could not exceed the amount of the verdict, thereby justifying a setoff from the jury’s verdict, rather than the judgment, after application of the noneconomic cap and collateral source rule. *21 By applying the setoff directly to the unadjusted verdict, the lower courts thus subverted both the clear directive of MCL 600.1483 — that medical malpractice plaintiffs not recover noneconomic losses beyond the legislatively determined amount — and the purpose of the common-law setoff rule — to ensure that overcompensation does not occur. Under the lower courts’ application of the cap and common-law setoff rule, plaintiff recovered $195,000 more than her actual loss as determined by the Legislature. Because plaintiffs economic losses were zero, because of collateral sources, the remaining final judgment of $394,200 after the cap was necessarily composed of only noneconomic losses. Plaintiffs total recovery from all joint tortfeasors, however, was $589,200 — which is $195,000 more than that allowed by the collateral source rule and the cap on noneconomic damages.
Plaintiff would have us affirm the lower courts’ erroneous application of the cap and rule, but her argument fails due to similar shortcomings. Like the Court of Appeals, plaintiff and Justice HATHAWAY’s dissent assert that the measure of her actual losses for purposes of the setoff is the jury’s verdict and that she can only be overcompensated for purposes of the common-law setoff rule if she receives more than the jury’s verdict. Plaintiff cites both Kaiser and Markley for the proposition that the unadjusted jury verdict is the measure of the one full recovery to which plaintiff is entitled, but these cases are simply inapposite. Kaiser involved a vehicle owner’s vicarious liability for those who drive the owner’s vehicle, and there is no similar damages cap in the context of vehicle-owner vicarious-liability cases. It was not necessary for Kaiser to address the interaction between a statutory limitation on damages and the common-law setoff and, thus, distinguish between “judgments” and “jury verdicts” as the measure of the one full recovery to which a plaintiff is entitled. Markley also does not support *22 plaintiffs position. Indeed, Markley itself acknowledged that “there [was] no reason to address the damage cap” when applying the setoff rule.[41] Like in Kaiser, it was unnecessary for Markley to distinguish between “judgments” and “jury verdicts” as the measure of actual loss. Plaintiff also cites our decision in Rittenhouse v Erhart[42] for the same proposition, but Rittenhouse is likewise unhelpful because it did not address the interaction between the damages cap and the common-law setoff rule.[43]
*23 Accordingly, we hold that where principles of joint and several liability apply in a medical malpractice case and a codefendant has settled a plaintiffs claim before trial, a circuit court must first apply to the jury’s verdict the noneconomic damages cap, as well as any other statutorily required adjustments, before reducing the award by the amount of the codefendant’s settlement. Here, plaintiff received a settlement from codefendants in the amount of $195,000. At a later trial against defendant, the jury returned a verdict for plaintiff for $1,524,831.86. Given our holding, it was error for the lower courts to apply the setoff against the jury’s verdict. Rather, the proper order of operation was to first apply both the collateral source rule and the noneconomic damages cap to arrive at the final judgment, which is plaintiffs full compensation for her injury as determined by the Legislature.[44] Because plaintiff has already received partial compensation for that injury, application of the common-law setoff rule requires that codefendants’ settlement be subtracted from the final judgment so that plaintiff does not receive more than a single recovery for her single injury.[45] Consequently, plaintiff is entitled to a judgment *24 against defendant in the amount of $199,200.[46]
This result and our holding are in accord with decisions of other jurisdictions with similar damages-cap statutes. In Fairfax Hosp Sys, Inc v Nevitt,[47] the Virginia Supreme Court ruled that the $1 million cap on medical malpractice damages reduces a verdict before any settlements are set off against it: “[WJhere there is a verdict by a jury or a judgment by a court against a health care provider for ‘injury to ... a patient’ and the total amount recovered in that action and in all settle *25 ments related to the medical malpractice injury exceeds one million dollars, the total amount the plaintiff can recover for that injury is one million dollars.” Similarly, in Lockshin v Semsker,[48] the Maryland Court of Appeals ruled that “any verdict rendered by a jury exceeding the amount of the non-economic damages cap inherently is a verdict in the amount of the cap from the moment it is rendered.” The court therefore concluded that “the appropriate order of operations is to apply first the cap to the jury’s verdict for non-economic damages, followed by a credit for the joint tortfeasor settlement.”[49]
Plaintiff criticizes this position and claims that it requires the itemization of settlements. Plaintiffs position actually causes this perceived harm, however. When a judgment contains both economic and noneconomic damages, a circuit court applying the setoff to the jury’s verdict before application of the collateral source rule would have to determine how to allocate the settlement between economic and noneconomic damages. This is a result we cannot condone, not only because it can result in an outcome contrary to the mandate of MCL 600.1483, but also because it could discourage settlements in instances in which there are *26 multiple related defendants.[50] Additionally, in instances like the present, in which the composition of the settlement is unknown, circuit courts would be left to guess at how a settlement should be allocated. Requiring circuit courts to engage in this guesswork, from which a range of potential outcomes could result, unreasonably burdens them with a determination that they are, in the absence of any statutory guidance, ill-prepared to make. Our holding, on the other hand, that a circuit court must subtract the total settlement from the final judgment, creates no need to allocate the settlement proceeds between economic or noneconomic damages before applying the setoff. Rather, the settlement is treated as an aggregate award to be applied against the plaintiffs total actual loss, meaning the final judgment after application of the applicable statutory adjustments.
V CONCLUSION
To the extent the Legislature has not abolished principles of joint and several liability, those principles and the common-law setoff rule remain the law in Michigan. Markley reached this same conclusion, and we decline plaintiffs invitation to conclude that Markley was wrongly decided. Further, when joint and several liability principles apply in medical malpractice cases, any settlement must be set off from the final judgment after application of the noneconomic damages cap and the collateral source rule. The lower courts *27 erroneously set off codefendants’ settlement against the jury’s verdict, which resulted in plaintiff receiving $195,000 more for her injury than permitted by law. Accordingly, we reverse the portion of the Court of Appeals’ judgment upholding the circuit court’s application of the common-law setoff rule and remand to the circuit court for entry of an order reducing the final judgment by $195,000.
YOUNG, C.J., and Markman (except for the fourth sentence of the third paragraph on page 11) and ZAHRA, JJ., concurred with MARY BETH KELLY, J.

 Markley v Oak Health Care Investors of Coldwater, Inc, 255 Mich App 245; 660 NW2d 344 (2003).

 Throughout the rest of this opinion, “defendant” refers to Tuma only, while “codefedants” refers to the hospital defendants that settled with plaintiff.

 MCL 600.1483(3) defines “noneconomic loss” as “damages or loss due to pain, suffering, inconvenience, physical impairment, physical disfigurement, or other noneconomic loss.”

 Markley, 255 Mich App at 250-251.

 There is no dispute between the parties that plaintiffs noneconomic damages are capped at $394,200.

 In medical malpractice cases, the collateral source rule requires a circuit court to reduce a jury’s award of economic damages by the amount already paid by collateral sources, such as insurers or other providers. MCL 600.6303. There is no dispute that plaintiff’s total economic damages are eliminated by the collateral source rule because plaintiff has received, and will continue to receive, supplemental security income benefits from the Social Security Administration.

 The circuit court’s calculation can be demonstrated as follows:
Total Jury Verdict $1,524,831.86
Settlement Setoff - $195,000
Post Setoff Verdict $1,329,831.86
Economic Damages ) due to reduction for collateral sources
Noneconomic Damages $394,200 due to statutory cap on noneconomic damages
Final Judgment $394,200

 Velez v Tuma, 283 Mich App 396; 770 NW2d 89 (2009).

 Id. at 412.

 Id. at 413.

 Id.

 Velez v Tuma, 488 Mich 903 (2010). Before our initial denial, we had held the case in abeyance for the resolution of issues not involved in this appeal. Velez v Tuma, 775 NW2d 146 (Mich, 2009).

 Velez v Tuma (On Reconsideration), 489 Mich 956 (2011). With respect to defendant’s remaining issue, leave to appeal is denied, because we are not persuaded that the question presented should be reviewed by the Court.

 Velez v Tuma, 491 Mich 873 (2012).

 Kaiser v Allen, 480 Mich 31, 35; 746 NW2d 92 (2008).

 Id.

 Const 1963, art 3, § 7.

 Wold Architects & Engineers v Strat, 474 Mich 223, 233; 713 NW2d 750 (2006).

 Id.

 Rusinek v Schultz, Snyder & Steele Lumber Co, 411 Mich 502, 507-508; 309 NW2d 163 (1981).

 Dawe v Dr Reuven Bar-Levav & Assoc, PC, 485 Mich 20, 28; 780 NW2d 272 (2010), quoting Hoerstman Gen Contracting, Inc v Hahn, 474 Mich 66, 74; 711 NW2d 340 (2006).

 1995 PA 161 added MCL 600.2956 to the Revised Judicature Act to provide that “the liability of each defendant for damages is several only and is not joint.”

 MCL 600.6304(6)(a) states that “joint and several” liability applies to a medical malpractice claim as long as the plaintiff is determined to be without fault.

 Gerling Konzern Allgemeine Versicherungs AG v Lawson, 472 Mich 44, 49; 693 NW2d 149 (2005); see also Maddux v Donaldson, 362 Mich 425, 433; 108 NW2d 33 (1961); Verhoeks v Gillivan, 244 Mich 367, 371; 221 NW 287 (1928).

 MCL 8.3a.

 Lawson, 472 Mich at 49 (“[Under principles of joint and severed liability,] each individual tortfeasor was liable for the entire judgment, although the injured party was entitled to full compensation only once.”); Verhoeks, 244 Mich at 371 (“ ‘The injured party has the right to pursue *14 [tortfeasors] jointly or severally at his election, and recover separate judgments; but, the injury being single, he may recover but one compensation.’ ”) (citation omitted).

 Thick v Lapeer Metal Prod, 419 Mich 342, 348 n 1; 353 NW2d 464 (1984) (“[W]here a negligence action is brought against joint tortfeasors, and one alleged tortfeasor agrees to settle his potential liability by paying a lump sum in exchange for a release, and a judgment is subsequently entered against the non-settling tortfeasor, the judgment is reduced pro tanto by the settlement amount.”).

 Markley, 255 Mich App at 256-257.

 Id. at 257. We disagree with plaintiffs characterization oí Markley as “reviving” the common-law setoff rule. To the contrary, Markley’s reasoning, in our understanding, is consistent with our reasoning that the Legislature intended to preserve setoffs of a joint tortfeasor’s settlement because the Legislature expressly retained joint and several liability in the medical malpractice context.

 Kaiser, 480 Mich 31.

 Id. at 36.

 Henry v Dow Chem Co, 473 Mich 63, 83; 701 NW2d 684 (2005); Nation v W D E Electric Co, 454 Mich 489, 494; 563 NW2d 233 (1997).

 Nation, 454 Mich at 494.

 Driver v Naini, 490 Mich 239, 247 n 24; 802 NW2d 311 (2011).

 Nation, 454 Mich at 494.

 Emphasis added. Although there is no dispute regarding the cap amount in this case, the amount of the cap is adjustable “at the end of each calendar year to reflect the cumulative annual percentage change in the consumer price index.” MCL 600.1483(4).

 In the absence of a statutory definition, we may rely on dictionary definitions. Cox v Flint Bd of Hosp Managers, 467 Mich 1, 18; 651 NW2d 356 (2002). Black’s Law Dictionary (9th ed) broadly defines “recoverable” to mean “[cjapable of being recovered.” Justice Hathaway, however, claims that we have added language to MCL 600.1483 because the provision “makes no reference to settlements at all.” Post at 36. This interpretation ignores entirely the breadth of the definition of the term “recoverable.”

 Justice Hathaway mischaracterizes MCL 600.1483, and other provisions limiting damages, as measures that “preclude a plaintiff from receiving overcompensation,” post at 32, and opines that a “court must determine whether the plaintiff is being overcompensated,” post at 32, 33. As we have explained, however, by automatically limiting a verdict of noneconomic damages to the amount of the cap, MCL 600.1483 sets the total amount of compensation allowed. Because the cap represents a predetermined legislative policy limitation on a plaintiffs total compensation for noneconomic injuries, it forms the basis of determining to what extent a recovery for noneconomic damages necessarily represents overcompensation, and a court cannot exceed that predetermined limitation on compensation.

 MCL 600.6306 directs a trial court to make certain deductions from a jury’s award of damages before entering a final judgment, but it does *19 not provide guidance with respect to application of the cap or the common-law setoff rale. MCL 600.6306 states in relevant part:
(1) After a verdict rendered hy a trier of fact in favor of a plaintiff, an order of judgment shall be entered by the court. Subject to [MCL 600.2959], the order of judgment shall be entered against each defendant, including a third-party defendant, in the following order and in the following judgment amounts:
(a) All past economic damages, less collateral source payments as provided for in [MCL 600.6303].
(b) All past noneconomic damages.
(c) All future economic damages, less medical and other health care costs, and less collateral source payments determined to be collectible under [MCL 600.6303(5)] reduced to gross present cash value.
(d) All future medical and other health care costs reduced to gross present cash value.
(e) All future noneconomic damages reduced to gross present cash value.

 Justice Hathaway contends that our application of the setoff creates a “new rule that bears little resemblance to the common-law setoff rule or its underlying purpose,” post at 35, and that our failure to recognize the verdict as the measure of full compensation “disregards the obvious,” post at 34 However, before the Legislature’s creation of the cap on noneconomic damages, there was no need for the common law to make the distinction that we recognize. We have not, therefore, ignored that the setoff has traditionally been applied to the verdict. Rather, consistent with our jurisprudence, we have applied both the common-law rule and the statute in the manner that best gives effect to the purposes of both. See, e.g., People v Nowack, 462 Mich 392, 406; 614 NW2d 78 (2000) (noting that the common law is adopted into our jurisprudence to the extent that it is consistent with our state and federal constitutions and statutes). Consequently, it is the dissent’s interpretation that fails to effectuate both the purpose of the statute and the common-law rule because, as the dissent does not dispute, its interpretation would allow a medical malpractice plaintiff to recover more than the statutorily limited amount.

 Markley, 255 Mich App at 258.

 Rittenhouse v Erhart, 424 Mich 166; 380 NW2d 440 (1985).

 As additional support, plaintiff and Justice Hathaway argue that MCL 600.1483 does not limit the total amount of noneconomic damages plaintiff may recover because MCL 600.1483(1) only applies to jury awards, not settlements. Specifically, the dissent posits that MCL 600.1483(1) applies only to jury awards because the language of MCL 600.1483(2), which requires juries “awarding damages” to “itemize damages,” refers only to jury awards. This conclusion does not logically follow when the subsections are read together because MCL 600.1483(1) makes no reference to a jury award, but uses the broader phrase “the total amount of damages for noneconomic loss recoverable....” Justice Hathaway further asserts that the Legislature only intended jury awards, not settlements, to be reduced by the noneconomic damages cap because MCL 600.6304(5) is silent with respect to any reduction by reason of a settlement. Post at 37. That provision requires a circuit court to reduce an excessive “award of damages” to the amount of the noneconomic damages cap. This silence, however, does not preclude a court from applying the common-law setoff rule after applying the noneconomic damages cap to the jury verdict. Finally, these arguments are unavailing because to interpret the noneconomic damages cap as applying only to jury awards and not settlements would render nugatory the term “recoverable” in MCL 600.1483(1), which as we have explained does not delimit the manner in which recovery is obtained. Plaintiff and the dissent’s construction is one we cannot adopt because we “ ‘must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute ... nugatory’ ” Jenkins v Patel, 471 Mich 158, 167; 684 NW2d 346 (2004) (citation omitted). Justice Hathaway, like plaintiff, simply neglects to consider that the Legislature did not intend a plaintiff to recover noneconomic damages greater than that allowed by the statute and that plaintiffs recovery of noneconomic damages is, in effect, set by law.

 Justice Cavanagh criticizes this application of the setoff rule because it “provides defendants with both the benefit of the damages cap and the further reduction of the common-law setoff.” Post at 28. Yet this result is exactly what we intend because it is also what the Legislature intends. Had the Legislature intended to preclude this result from inuring to the benefit of a medical malpractice defendant, it could have used a phrase less broad than “total amount of damages for noneconomic loss recoverable” in MCL 600.1483(1) or otherwise prohibited any application of the setoff rule.

 By allegedly reducing plaintiffs “noneconomic damages award” by the amount of the settlement, Justice Hathaway is concerned that our decision has assumed that the settlement proceeds consisted of noneconomic damages and that this result “ignores the actual agreement of the settling parties.” Post at 39. These concerns are unfounded. Our holding does not require the reduction of plaintiffs noneconomic damages by the amount of the settlement. Rather, our holding requires a court to subtract the entire amount of the settlement from whatever damages *24 remain after applying the relevant statutory adjustments. Nor have we assumed that the settlement in this case was composed solely of noneconomic damages. Indeed, as the dissent admits, the settlement was an aggregate award for all the damages, including economic and noneconomic damages, costs, attorney fees, and interest. As an aggregate award, subtraction of the settlement from the adjusted verdict in this case does not alter the terms of the settling parties’ agreement. While collateral sources that exist in this case happened to reduce the economic damages to zero, the order-of-operations rule that we establish today applies to all adjusted verdicts, whether they contain only economic damages, only noneconomic damages, or some combination thereof.

 This equation can be summarized as follows:
Total Jury Verdict $1,524,831.86
Economic Damages $124,831.86, reduced to $0 by collateral sources
Noneconomic Damages $1,400,000, reduced to $394,200 due to cap on noneconomic damages
Settlement Setoff • $195,000
Final Judgment $199,200

 Fairfax Hosp Sys, Inc v Nevitt, 249 Va 591, 599; 457 SE2d 10 (1995) (citation omitted).

 Lockshin v Semsker, 412 Md 257, 283; 987 A2d 18 (2010).

 Id. Numerous other jurisdictions have also required application of noneconomic damages caps before setting off a settlement so that plaintiffs do not recover more damages than permitted by the applicable law. See Mayes v Bryan, 139 Cal App 4th 1075, 1099-1103; 44 Cal Rptr 3d 14 (2006) (holding that the trial court properly applied the noneconomic damages cap, Cal Civ Code 3333.2, first before reducing the judgment by the percentage of fault attributed to the settlement the plaintiff had already recovered because “the plaintiff could not recover more than $250,000 in noneconomic damages from all health care providers for one injury,”); Garhart v Columbia/Healthone, LLC, 95 P3d 571, 591 (Colo, 2004) (holding that noneconomic damages cap allowing a total recovery of $250,000, Colo Rev Stat 13-64-302, must be applied to a jury’s verdict first before allocating fault attributed to a settlement, so that the plaintiff does not recover more than the cap).

 Under plaintiffs rule, medical malpractice plaintiffs would have an incentive to structure settlement agreements as entirely economic damages, especially when the plaintiff expects collateral sources to wipe out all economic damages. The settling codefendants, however, might be unwilling to enter into such an agreement, knowing that it could potentially prejudice their associates and potentially sour business relationships.