*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HEATHER MALONE,

      Plaintiff-Appellant,

v

CONOR THOMPSON MCRELL and ZHETMAN
BRIGHTON, LC,

      Defendants-Appellees,

and

FARMERS INSURANCE EXCHANGE,

      Defendant.

FOR PUBLICATION
October 26, 2023
9:05 a.m.

No. 356416
Livingston Circuit Court
LC No. 19-030275-NI

## ON REMAND

Before: SWARTZLE, P.J., and REDFORD and GARRETT, JJ.

SWARTZLE, P.J.

This matter returns to this Court on remand from our Supreme Court with directions to consider "whether the 1995 amendment of MCL 600.2925d(a) abrogated the common-law rule that a valid release of an agent for tortious conduct operates to bar recovery against the principal on a theory of vicarious liability, even though the release specifically reserves claims against the principal." *Malone v McRell*, 985 NW2d 526 (Mich, 2023). This Court was not presented with this issue on plaintiff's first appeal, in which we affirmed summary disposition for Zhetman Brighton, LC. On remand, we again affirm.

## I. BACKGROUND

The facts relevant to this remand are brief. Conor McRell was employed by Zhetman as a pizza-delivery driver when he rear-ended plaintiff while he was delivering a pizza. McRell entered into a settlement agreement with plaintiff, and Zhetman argued that it was entitled to summary

disposition because it could not be vicariously liable for McRell since he had settled his liability. The trial court granted Zhetman summary disposition.

This Court held, in a split decision, that the settlement agreement released McRell from further liability, and that our Supreme Court's ruling in *Theophelis v Lansing Gen Hosp*, 430 Mich 473, 480; 424 NW2d 478 (1988) barred plaintiff's recovery against Zhetman on the theory of vicarious liability because "[a]t common law a valid release of an agent for tortious conduct operates to bar recovery against the principal on a theory of vicarious liability, even though the release specifically reserves claims against the principal." Thus, we held that the trial court did not err in granting Zhetman summary disposition.

Plaintiff appealed in our Supreme Court, and this case was remanded to this Court with the instruction as stated above.

## II. ANALYSIS

The interpretation and application of statutes, rules, and legal doctrines are reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). The goal of statutory interpretation is to determine and apply the intent of the Legislature. *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217; 801 NW2d 35 (2011). The first step in determining legislative intent is to examine the specific language of the statute. *CG Automation & Fixture, Inc v Autoform, Inc*, 291 Mich App 333, 338; 804 NW2d 781 (2011).

Under our Constitution of 1963, common-law principles remain in effect "until they expire by their own limitations, or are changed, amended or repealed." Const 1963 art 3, § 7; see also *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 258-259; 828 NW2d 660 (2013). "With respect to questions involving a statute, this means that this Court must read the statutory language in light of the common law except to the extent that the Legislature has abrogated or modified it." *Al-Hajjaj v Hartford Accident & Indemnity Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359291); slip op. at 3.

Our Legislature may alter or abrogate the common law through its legislative authority, *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 473; 952 NW2d 434 (2020), but "the mere existence of a statute does not necessarily mean that the Legislature has exercised this authority," *Murphy v Inman*, 509 Mich 132, 144-145; 983 NW2d 354 (2022) (cleaned up). This Court "will not lightly presume that the Legislature has abrogated the common law," and "the overriding question is whether the Legislature intended to abrogate the common law." *Id*. at 153. Our Legislature "should speak in no uncertain terms when it exercises its authority to modify the common law." *Velez v Tuma*, 492 Mich 1, 11; 821 NW2d 432 (2012) (cleaned up).

Our Supreme Court has directed this Court to determine whether the 1995 amendment to MCL 600.2925d(a) abrogated the common-law rule regarding vicarious liability. MCL 600.2925d was enacted by 1974 PA 318, and before it was amended in 1995 it provided:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 or 2 or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide.

(b) It reduces the claim against the other tort-feasors to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of the consideration paid for it, whichever amount is greater.

(c) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

Our Legislature last amended MCL 600.2925d with 1995 PA 161, and the statute currently provides:

If a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons for the same injury or the same wrongful death, both of the following apply:

(a) The release or covenant does not discharge 1 or more of the other persons from liability for the injury or wrongful death unless its terms so provide.

(b) The release or covenant discharges the person to whom it is given from all liability for contribution to any other person for the injury or wrongful death.

For our purposes, the operative change made by our Legislature was to replace the term "tort-feasors" to "persons" in subsection (a). Plaintiff argues that this change is significant because the term "persons" implies that the statute encompasses all individuals and corporate bodies, MCL 8.3*l*, including those who would only be liable under a theory of respondeat superior.

To begin, the plain language of subsection (a) itself says nothing about respondeat superior or the common-law rule involving the release of a principal. Even though the term "persons" implicitly could include principals whose agents released their liability, this Court will not "lightly presume that the Legislature has abrogated the common law." *Velez*, 492 Mich at 11. Rather, we must read the entire statute, in both its immediate and broader context, as well as the statutory history to determine whether our Legislature intended to abrogate the common-law rule with respect to respondeat superior. See *Soaring Pine Capital Real Estate and Debt Fund II, LLC v Park Street Group Realty Servs, LLC*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 163320); slip op. at 18.

In *Theophelis*, our Supreme Court considered this same question in the context of an earlier amendment added by our Legislature in 1974 PA 318. The Court focused on the historical background of MCL 600.2925 and related sections. In so doing, our Supreme Court recognized that "although enactment in 1941 of the Michigan's contribution statute narrowed the scope of concomitant doctrines applicable to contribution and release, this Court made clear in *Geib v Slater*, 320 Mich 316; 31 NW2d 65 (1948) that the statute did not abrogate the common-law rule that release of an agent discharges the principal." *Theophelis*, 430 Mich at 483 (cleaned up). The *Theophelis* Court explored in some detail the doctrinal distinction between contribution among joint tortfeasors versus the liability of a principal for the actions of its agent. *Id.* at 483. When it

-3-

enacted 1974 PA 318, the Legislature provided no signal that it intended to breach or dissolve that doctrinal distinction, and, accordingly, the Court held that our Legislature did not, in fact, "abrogate the common-law doctrine that release of an agent discharges the principal." *Id*. at 483, 487.

We similarly conclude that our Legislature still has not clearly signaled its intent to abrogate this common-law rule, even with its enactment of 1995 PA 161. As mentioned already, there is nothing in MCL 600.2925d itself, as amended by 1995 PA 161, that speaks to "principal" or "agent," nor is there any mention of those terms in the immediately surrounding sections. In fact, MCL 600.2925a through 600.2925d all deal generally with matters involving contribution in the context of joint-and-several liability. This makes sense, as other amendments made by our Legislature with 1995 PA 161 similarly involve matters of contribution and joint-and-several liability. See, e.g., MCL 600.2956 ("[T]he liability of each defendant for damages is several only and is not joint.); MCL 600.2957 ("[T]he liability of each person shall be allocated under this section by the trier of fact and…in direct proportion to the person's percentage of fault."); MCL 600.2958 ("[A] plaintiff's contributory fault does not bar that plaintiff's recovery of damages."); and MCL 600.2959 ("[T]he court shall reduce the damages by the percentage of comparative fault of the person upon whose injury or death the damages are based.").

Although not directly on-point, our Supreme Court had occasion to consider whether the Legislature intended to abrogate a common-law rule involving setoff when it amended MCL 600.2925d(b) in 1995 PA 161—i.e., the subsection directly following the one at issue in the present case. The Court concluded in *Velez* that the common law had not been abrogated, as subsection (b) "was but one part of comprehensive tort-reform legislation," and there was no conflict between 1995 PA 161 and the common-law rule regarding setoff. *Velez*, 492 Mich at 12.

Similar to subsection (b), subsection (a) of MCL 600.2925d does not abrogate the common-law rule that the release of an agent acts as a release of the principal. The amendment that altered subsection (a) was one part of a comprehensive tort-reform package focused on contribution and joint-and-several liability, and the common-law rule regarding vicarious liability does not conflict with that legislation. Although a myopic reading of subsection (a)—specifically, the change from "tort-feasors" to "persons"—could implicitly encompass principals who are liable only under a theory of respondeat superior, our Legislature must speak in no-uncertain terms when it intends to abrogate the common law. *Velez*, 492 Mich at 11. It did not do so here, and we hold that 1995 PA 161 did not abrogate the common-law rule that a release of the agent acts as a release of the principal when the theory of liability is respondeat superior.

## III. CONCLUSION

Because the common law has not been abrogated, our prior holding in this case stands: "[T]he settlement agreement released Malone's claims against McRell. Because Zhetman could only be liable through McRell's actions, the release also released Malone's claims against Zhetman despite its attempt to do otherwise." *Malone v McRell*, unpublished opinion of the Court of Appeals, issued September 22, 2022 (Docket No. 356416), p 2.

The parties also raise other arguments on remand regarding res judicata and whether the settlement agreement was a covenant not to sue rather than a release. When our Supreme Court

-4-

remands a case to this Court with a limited scope, however, it is improper for this Court to exceed the scope of that remand order. *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Bd of Trustees v Pontiac (On Remand)*, 317 Mich App 570, 588; 895 NW2d 206 (2016). Because the remand order in this case specifically ordered this Court to reconsider whether the 1995 amendment abrogated the common law, we decline to address the parties' other issues.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Kristina Robinson Garrett