*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN BRUNNER,

        Plaintiff-Appellee,

v

CONCENTRIX CORPORATION,

        Defendant-Appellant.

UNPUBLISHED
March 12, 2025
11:24 AM

No. 368404
Ottawa Circuit Court
LC No. 19-005783-CD

Before: N. P. HOOD, P.J., and BOONSTRA and FEENEY, JJ.

PER CURIAM.

Defendant, Concentrix Corporation (Concentrix), appeals by right the judgment entered by the trial court, following a jury trial, awarding plaintiff, John Brunner, $1,090,391.96 plus costs and attorney's fees. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Brunner started working for Concentrix in 2014. His job title was originally "cost engineer" but was later changed to "solutions architect." Brunner's performance reviews from December 2015 through November 2016 rated his work performance as five out of five, which correlated with "significantly exceeds performance."

In 2017, Anne Sutherland became Brunner's direct supervisor. In 2018, Concentrix acquired a company named Convergys and, as a result of that acquisition, Jason Stickney became the "global solutions director" of Concentrix, supervising Sutherland. After the Convergys acquisition, Stickney conducted one-on-one phone calls with the employees under Sutherland's supervision. None of these conversations happened face-to-face, and Stickney testified that he did not have access to any of the employees' personal files or demographic information.

Stickney's phone call with Brunner lasted about seven minutes. Brunner testified that the conversation largely involved football, and that Brunner told Stickney that he graduated from the University of Michigan in 1975 and that he had sons who had graduated from the University of Michigan and Michigan State. Conversely, Stickney testified that he did not recall having a conversation with Brunner about football or colleges. Stickney testified that he told Brunner that

he foresaw the solutions architects becoming more involved in preparing proposals, and, according to Stickney, Brunner responded "[t]hat he liked what he was doing and that he didn't see that it was necessary to take on those additional tasks because there was another team in the company that was already doing that." Stickney further testified that he told Brunner that he wanted the solutions architects to become more involved in sales and exploring the business case scenarios for the new technologies. According to Stickney, Brunner again responded that he wanted to continue what he was doing because there was another team within the company already performing those activities. However, Brunner testified that he would not have had any objection to becoming more involved in requests for proposals or new technologies, and under Sutherland's leadership, he had already been responsible for writing and reviewing certain sections of customer proposals.

After the phone call, Stickney learned that there was going to be a reduction in workforce. Stickney was told to make a recommendation for each person within Sutherland's group regarding whether the employee should be retained or terminated; he testified that he was not given any specific parameters to use in making that decision. Stickney ultimately recommended termination for Brunner, explaining that he did not think that Brunner was interested in the expanded role he envisioned for solutions architects. Stickney never met Brunner face-to-face before firing him. Brunner received a document from Human Resources, which listed the factors that Concentrix had considered in deciding to terminate him. These considerations included job criticality, skillset and abilities, and redundancy of the role. Brunner reiterated that none of these topics were discussed during his phone call with Stickney.

Prior to trial, Brunner moved to admit Sutherland's deposition testimony under MRE 804(b)(5)(A) rather than call her as a witness, stating that she was facing serious health problems. The trial court ultimately held that Sutherland's deposition testimony was admissible, finding that (1) Sutherland was unavailable because she was living more than 100 miles away, and (2) Concentrix had the motive and opportunity to develop Sutherland's testimony during the deposition.

Sutherland's deposition testimony was read to the jury. Sutherland stated that after his one-on-one phone call with Brunner, Stickney told Sutherland that Brunner "sounds like an older guy. He's 65 years old . . . . He just seems like a guy that just really wouldn't be open to change."[1] Sutherland further testified that, on the night before Brunner was terminated, Stickney called to inform her of the termination. Sutherland initially testified that Stickney did not mention Brunner's age during this discussion; however, Sutherland later testified that Stickney stated, "I just feel terrible about doing this to this guy, you know, who worked all these years, all these hard years of his life, and here he is 65—I believe he said 65—65 years old and now I've gotta call and deliver him this message." Sutherland testified that she told Stickney that Brunner was one of her strongest employees. Sutherland also testified that she expressed concerns to management regarding age discrimination. Sutherland was terminated shortly after Brunner's termination.

Richard Rosso, the senior vice president of sales and account management for Concentrix, and Virginia Maedgen, a Concentrix Human Resources employee, both testified that Brunner's

---

[1] Stickney denied ever telling Sutherland that Brunner was 65 years old.

age had nothing to do with the decision-making process and that Sutherland never raised concerns with them regarding Brunner's termination.

The jury ultimately returned a verdict in favor of Brunner as described. Concentrix moved for a new trial, which the trial court denied. This appeal followed.

## II. JURY INSTRUCTIONS

Concentrix argues that the trial court erred by failing to correctly instruct the jury that age had to be the "but for" cause of Brunner's termination. We conclude that Concentrix has waived this issue.

"To preserve an instructional issue for appeal, a party must request the instruction before instructions are given and must object on the record before the jury retires to deliberate." *Heaton v Benton Constr Co*, 286 Mich App 528, 537; 780 NW2d 618 (2009). A parties' expression of satisfaction with the instructions constitutes waiver and extinguishes any error concerning the instructions. *Moore v Detroit Entertainment*, *LLC*, 279 Mich App 195, 224; 755 NW2d 686 (2008).

Prior to trial, Concentrix requested that the trial court instruct the jury using a modified version of M Civ JI 105.02 and M Civ JI 105.04, arguing that the modified jury instructions did not contradict the standard jury instructions, but merely clarified the correct "but for" causation standard required by the Michigan Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. Brunner objected, arguing that the standard jury instructions correctly explained the "determining factor" standard required by the ELCRA.

At the final status conference, the trial court inquired about the possibility of adding some additional language to the standard jury instructions to clarify the correct causation standard. Concentrix's counsel agreed to the idea, stating, "I agree with you, your Honor, that if there would be some additional clarification language added to the proposed to include a 'but for' sentence that that would be consistent with the Michigan supreme courts [sic] reflection of what 'because of' means." The trial court ultimately decided to leave M Civ JI 105.02 untouched, and to add language to the end of M Civ JI 105.04. Counsel for Concentrix did not object further during the status conference, or to the modified jury instructions at any point during trial. Moreover, at the conclusion of the trial, before jury deliberations, counsel for Concentrix raised objections to other jury instructions, but not to M Civ JI 105.02 or 105.54. After these other objections were resolved, Concentrix's counsel stated, "I don't have any other issues with respect to the jury instructions . . . ."

Because Concentrix ultimately expressed satisfaction with the jury instructions, this issue is waived, and any error is extinguished. See *Moore*, 279 Mich App at 224.[2]

---

[2] We note that, were we to review the issue, we would hold that the challenged jury instructions accurately stated the law, and that the trial court properly instructed the jury. See *Lewis v LeGrow*,

### III. ADMISSION OF SUTHERLAND'S DEPOSITION TESTIMONY

Concentrix also argues that the trial court erred by permitting Sutherland's deposition testimony to be read to the jury, because Brunner did not demonstrate that an exception to the hearsay rule applied. We disagree.

"We review a trial judge's evidentiary decisions for an abuse of discretion. A trial judge abuses his or her discretion when the judge selects an outcome that is outside the range of principled outcomes." *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 153-154; 908 NW2d 319 (2017) (citation omitted). "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 729; 761 NW2d 454 (2008) (quotation marks and citation omitted). "We review de novo whether the trial judge properly interpreted and applied the rules of evidence to the facts." *Mitchell*, 321 Mich App at 154. We also review de novo issues of statutory interpretation. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205; 815 NW2d 412 (2012).

"Our primary goal when interpreting statutes is to discern the intent of the Legislature." *Id*. "The words used by the Legislature are given their common and ordinary meaning. If the statutory language is unambiguous, we presume that the Legislature intended the meaning that it clearly expressed, and further construction is neither required nor permitted." *Id*. at 206 (citations omitted). Clear statutory language must be enforced as written. *Velez v Tuma*, 492 Mich 1, 16-17; 821 NW2d 432 (2012).

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c).[3] Hearsay is not admissible unless the Michigan rules of evidence provide otherwise. MRE 802. MRE 804(b)(5)(A) provides in relevant part that if a declarant is unavailable,[4] the admission of prior deposition testimony is not barred by the hearsay rule if certain conditions are met:

> *Deposition Testimony*. Testimony given as a witness in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

---

258 Mich App 175, 211; 670 NW2d 675 (2003); see also *Matras v Amoco Oil Co*, 424 Mich 675, 682-683; 385 NW2d 586 (1986).

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

[4] MRE 804(a) generally controls ways in which a declarant may be unavailable; however, MRE 804(b)(5)(A) contains its own additional rule regarding unavailability.

For purposes of this subsection only, "unavailability of a witness" also includes situations in which:

(A) The witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition[.]

In *Lombardo v Lombardo*, 202 Mich App 151, 155; 507 NW2d 788 (1993), this Court clarified that, under MRE 804(b)(5), deposition testimony is not excluded by the hearsay rule if three requirements are met:

(1) the person deposed is unavailable as a witness; (2) the deposition was taken in compliance with law; and (3) in the course of the same proceeding or another proceeding, the party against whom the testimony is now offered, or in a civil action a predecessor in interest, had an opportunity and similar motive to develop the testimony by examining the witness.

Concentrix does not argue that Sutherland's deposition was not taken in compliance with law, but does argue that Sutherland was not unavailable and that Concentrix did not have the opportunity and motive to develop Sutherland's testimony at her deposition.

## 1. UNAVAILABILITY AS A WITNESS

Concentrix argues that Brunner failed to demonstrate that Sutherland was an unavailable witness. We disagree.

Concentrix argues that Brunner did not satisfy MRE 804(a)(5), which provides in relevant part that the party seeking to admit deposition testimony show that they have been unable to procure the declarant's attendance and, in a criminal case, that they exercised due diligence. However, the relevant hearsay exception involving deposition testimony, MRE 804(b)(5)(A), provides its own definition of the unavailability of a witness as follows:

For purposes of this subsection only, "unavailability of a witness" also includes situations in which:

The witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition[.]

Because Brunner moved to admit Sutherland's deposition testimony under MRE 804(b)(5)(A), and MRE 804(b)(5)(A) clearly provides its own definition of an unavailable witness, that definition is the one that we must consider. See *Velez*, 492 Mich at 16-17; *Joseph*,

491 Mich at 205-206.[5] The trial court found that Sutherland lived more than 100 miles from the place of trial. Concentrix has not challenged that finding and does not argue that Sutherland's absence was procured by Brunner. Accordingly, the trial court did not abuse its discretion by determining that Sutherland was an unavailable witness under MRE 804(b)(5)(A).

### 2. OPPORTUNITY AND SIMILAR MOTIVE TO DEVELOP SUTHERLAND'S TESTIMONY

Concentrix also argues that it "did not have the same motive to examine Sutherland at her discovery deposition as at trial." We disagree.

Sutherland's lengthy deposition was conducted by Concentrix as part of discovery in this case. During her deposition, Sutherland stated that she had sent an e-mail to a few Concentrix employees after her and Brunner's terminations, in which she described negative statements made by Stickney. Concentrix later discovered the e-mail that Sutherland referred to, which stated as follows:

Rick,

As you know, I asked Ella to set up a meeting to discuss concerns related to issues related to existing leadership and the negative impact to CNX clients.

That meeting was scheduled for tomorrow at 1:30.

I was fired Friday but am still open to sharing specific details about the current leader of Solutions and the negative statements he makes to the team regarding your integrity, leadership skills and the future of CNX.

I told [Stickney] these comments were not acceptable to me and in direct conflict to our culture. He laughed and proceeded to mock and degrade our culture.

It's disturbing to me that three days later I was fired.

Concentrix argues that it would have used this e-mail on cross-examination to impeach Sutherland's credibility if she had testified at trial; because it was unable to do so, it was deprived of the opportunity to cross-examine Sutherland about her unfounded allegations. We disagree. Concentrix in fact introduced this email at trial during its examination of another witness, and was not prohibited from arguing that the email impeached Sutherland's credibility because it did not contain any comments about Brunner's termination or any concerns about age discrimination.

---

[5] Concentrix relies upon *Muilenberg v Upjohn Co*, 169 Mich App 636; 426 NW2d 767 (1988). However, *Muilenberg* did not involve deposition testimony, and MRE 804(b)(5)(A) did not exist at that time.

Moreover, two witnesses testified that Sutherland never raised concerns with them regarding Brunner's termination.[6]

Concentrix had the same motive to cross-examine Sutherland at her deposition as it did at trial: to show that Stickney's decision to terminate Brunner was not based on his age, or even that Stickney was not aware of Brunner's age. The deposition was conducted by Concentrix, lasted for several hours, and occurred a full year after the e-mail was sent. Moreover, Concentrix admitted Sutherland's e-mail into evidence at trial, and had the opportunity to argue that she never raised any complaints to management regarding Brunner's termination. Accordingly, we conclude that the trial court did not abuse its discretion by finding that Concentrix had an opportunity and similar motive to develop Sutherland's testimony at her deposition. *Lombardo*, 202 Mich App at 155.

Affirmed. Plaintiff, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Noah P. Hood
/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney

---

[6] We also note that Sutherland's e-mail was sent an entire year before her deposition testimony was taken, and her deposition was taken nearly five months before trial. Concentrix does not explain why it was unable to depose Sutherland regarding the content of this email.