# STATE OF MICHIGAN

# COURT OF APPEALS

PLANET BINGO, LLC, and MELANGE
COMPUTER SERVICES, INC,

      Plaintiffs/Counter Defendants-
      Appellants/Cross Appellees,

V

VKGS, LLC, doing business as VIDEO KING,

      Defendant/Counter Plaintiff-
      Appellee/Cross Appellant.

FOR PUBLICATION
April 18, 2017
9:10 a.m.

No. 328896
Ingham Circuit Court
LC No. 11-001369-CK

Before: BORRELLO, P.J., and Wilder and SWARTZLE, JJ.

PER CURIAM.

In this business dispute, plaintiffs-counter defendants Planet Bingo, LLC (Planet Bingo), and Melange Computer Services, Inc (Melange; collectively, plaintiffs), appeal as of right from the circuit court's final order dismissing the last pending claim in this case. Defendant-counter plaintiff, VKGS, LLC, doing business as Video King (Video King), claims its cross-appeal from that same order. We reverse in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

This case arises out of Video King's use of a software program ("EPIC") that was developed by Planet Bingo's subsidiary Melange, Video King's subsequent development of a competing software program ("OMNI"), and plaintiffs' allegation that Video King wrongfully developed OMNI using confidential information gleaned from EPIC. The relevant procedural history is complex. The parties have previously litigated claims related to this matter in other actions in foreign jurisdictions. See *VKGS, LLC v Planet Bingo, LLC*, 285 Neb 599; 828 NW2d 168 (2013) (*VKGS*); *Planet Bingo, LLC v VKGS, LLC*, 961 F Supp 2d 840 (WD Mich, 2013). Certain background facts pertinent to the instant appeal were set forth by the Nebraska Supreme Court in *VKGS*, 285 Neb at 601-603:

> Video King was founded in 1992 by . . . a gaming conglomerate[] to develop, manufacture, and distribute electronic bingo equipment. In 2005, Video King was conveyed to VKGS, LLC, in a spinoff transaction, but continued to do

business under the name "Video King." Video King's principal place of business is located in Omaha, Nebraska.

Since 2000, Video King and Melange have had a business relationship. Melange is a Michigan corporation formed in 1989 and has a principal place of business in Lansing, Michigan. Melange was the developer of a software program known as EPIC. On September 1, 2005, Video King and Melange entered into an agreement [(the 2005 agreement)] regarding the use of EPIC on Video King's electronic bingo equipment. Subsequent amendments to this agreement were entered into in 2007, 2008, 2009, 2011, and 2012. Per this continuing agreement, Video King and Melange conducted day-to-day business together, including communication via telephone, e-mail, reports, face-to-face meetings, and conferences.

In 2006, Melange was acquired by Planet Bingo and became a wholly owned subsidiary of Planet Bingo (hereinafter, Melange and Planet Bingo will be collectively referred to as "Planet Bingo").

At a time not specified by the record, Video King began developing its own software for electronic bingo equipment, called OMNI. Concerned that Video King improperly used Melange's confidential information to design bingo software, Planet Bingo filed suit against Video King in the U.S. District Court for the Western District of Michigan in May 2011. Planet Bingo alleged breach of contract, unfair competition, and unjust enrichment.

On October 5, 2011, a hearing was held on a motion filed by Planet Bingo for expedited discovery. At that hearing, the magistrate judge questioned whether there was federal diversity jurisdiction and ordered the parties to show cause why the case should or should not be dismissed for lack of diversity jurisdiction. On December 21, the case was dismissed on those grounds.

However, on December 13, 2011, prior to dismissal in federal court, Video King filed an action for declaratory judgment against Planet Bingo in [Nebraska's] Douglas County District Court. That action sought a declaration of the rights, status, and other legal obligations of the parties with respect to confidentiality agreements between the parties. Additionally, on December 20, Planet Bingo refiled its action in the Michigan state court system.

The preamble to plaintiffs' December 20, 2011 complaint in Ingham Circuit Court acknowledged that both the federal action and the Nebraska action remained pending at that time. Plaintiffs alleged three counts against Video King: (1) breach of contract, (2) common-law unfair competition, and (3) unjust enrichment. An underlying basis of all three claims was plaintiffs' allegation that, contrary to the confidentiality provisions of the 2005 agreement between the parties, Video King had used confidential information about EPIC to develop Video King's competing OMNI software.

The 2005 agreement had a substantial confidentiality clause:

> 17.    Confidentiality.    The PARTIES agree that all information, including without limitation the Software including any updates, enhancements and new releases thereof, the Documentation, including formulas, methods, know-how, processes, designs, new products, developmental work, marketing requirements, marketing plans, customer names, prospective customer names, the terms and pricing of agreements, and in general, any other information related to this Agreement, transmitted to the other, (the "Confidential Information"), shall be handled as confidential information regardless of the means through which it is disclosed, in accordance with the provisions of this clause.    Confidential Information shall be used exclusively for the purposes set forth in this Agreement and its Exhibits, therefore, at no time whatsoever, neither party may be entitled to provide, transfer, publish, reproduce or disclose such Confidential Information to third parties whether directly or indirectly through third parties; or in any manner whatsoever. . . . Each party acknowledges and accepts that the Confidential Information that it has received through any means or form and at any time, as well as that it may receive in the future under this Agreement and its Exhibits, is and shall continue to be the exclusive property of the party issuing such Confidential Information. . . . The obligation contained in this clause with regard to nondisclosure of Confidential Information shall survive for a period of five (5) years from the termination, rescission, or expiration date of this Agreement. . . . Each party acknowledges that Confidential Information may be unique and valuable to its owner, and that disclosure in breach of this Agreement will result in irreparable injury to the owner of such Confidential Information, for which monetary damages alone would not be an adequate remedy.  Therefore, each party agrees that in the event of a breach or threatened breach of the provisions set forth in this clause, the disclosing party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach or anticipated breach without the necessity of posting any surety or bond.  Any such relief shall be in addition to and not in lieu of any appropriate relief in the way of monetary damages and any other remedies that disclosing party may have at law or in equity.

Before answering plaintiffs' complaint, Video King filed its first of several motions for summary disposition.  Video King's first such motion was filed pursuant to MCR 2.116(C)(6) ("Another action has been initiated between the same parties involving the same claim.").  Citing in support *Valeo Switches & Detection Sys, Inc v Emcom, Inc*, 272 Mich App 309; 725 NW2d 364 (2006) (*Valeo*), Video King argued that the pending action in Nebraska involved the same claims as those asserted in plaintiffs' complaint here.  Thus, Video King argued, summary disposition was appropriate under MCR 2.116(C)(6), either with or without prejudice at the circuit court's discretion.  The circuit court ultimately denied Video King's motion under MCR 2.116(C)(6) without prejudice, reasoning that the claims involved in this action and the Nebraska action were not the "same" for purposes of MCR 2.116(C)(6).  In the meantime, plaintiffs filed a motion to dismiss the Nebraska action for lack of personal jurisdiction. *Id*. at 603.

Before responding to Video King's motion for summary disposition, plaintiffs filed a motion seeking a preliminary injunction enjoining Video King from "violating the provisions of the 2005 agreement; continuing to use confidential information relating to EPIC; and further offering for placement, placing, distributing, marketing, and advertising the OMNI system so long as it contains confidential information relating to EPIC." After considering the matter, the circuit judge issued a reciprocal preliminary injunction against the parties until such time as an evidentiary hearing could take place.

Two days after the circuit denied Video King's motion for summary disposition under MCR 2.116(C)(6) and issued its reciprocal preliminary injunction against the parties, the Nebraska district court entered an order dismissing the Nebraska action for lack of personal jurisdiction over plaintiffs. Video King pursued an appeal of the district court's ruling in Nebraska's appellate courts. *Id.* at 601.

The action below proceeded to discovery, which was extremely contentious. Among myriad discovery matters, the circuit court considered Video King's objection that plaintiffs were "trying to . . . use this lawsuit as a basis to try to learn about [Video King's] business" by requesting the production of documents spanning back to Video King's formation "back in the 1990s." Contending that the 2005 agreement's confidentiality clause only covered the period from the execution of that agreement (i.e., September 1, 2005) through December 24, 2008 (i.e., the date the parties executed an agreement that had no confidentiality provision), Video King argued that discovery should be limited to that time period: September 1, 2005, through December 24, 2008. Plaintiffs responded that, even assuming that the 2005 agreement was terminated by the execution of the December 24, 2008 agreement, the terms of the confidentiality provision extended the "life" of the provision for five years after termination of the agreement. Thus, plaintiffs argued, the confidentiality provision remained in effect until at least December 2013—well after Video King developed OMNI. With regard to the need for discovery to extend *before* the effective date of the 2005 agreement, plaintiffs argued that such discovery was necessary to refute Video King's argument that OMNI was based on information in Video King's possession before it had access to EPIC, not on confidential information it later received. The circuit court initially held that discovery would be limited to the period from September 1, 2005, until the present, but the court later revisited the issue and held that discovery would be limited to the period from January 28, 2005 (i.e., the date that VKGS acquired Video King and began to operate as Video King), until the present.

In September 2012, Video King sought and was granted leave to file an amended answer and counterclaims. Video King asserted two counterclaims against plaintiffs: (1) breach of contract and (2) tortious business interference and injurious falsehood.

On March 29, 2013, the Nebraska Supreme Court issued its decision concerning the district court's jurisdictional dismissal of the Nebraska action. *Id.* at 599. The Nebraska Supreme Court reversed, holding that the district court erred by determining that it lacked personal jurisdiction over Planet Bingo and Melange. *Id.* at 612. Thus, the Nebraska Supreme Court remanded the matter to the Nebraska district court for further proceedings. *Id.* According to the parties' briefs filed in the instant appeal, the remanded action in the Nebraska district court remains pending.

After entertaining numerous motions for partial summary disposition, the circuit court summarily disposed of all of plaintiffs' claims on various grounds. The circuit court also granted Video King partial summary disposition on the issue of liability regarding its counterclaim for breach of contract.

Upon reviewing a June 2015 letter that Video King's counsel had sent to the Nebraska district court, the circuit court concluded that the Nebraska action "involved the exact same claims and parties involved in this present case," and that Video King was using the Nebraska action "to essentially circumvent any limitations [the circuit court] placed on discovery . . . ." After receiving an unfavorable discovery ruling in the circuit court, Video king "would then go to the Nebraska court and seek the exact same discovery . . . ." Thus, during a telephonic pretrial conference with the parties, the circuit court "indicated to the parties that its intent was to dismiss the case sua sponte pursuant to MCR 2.116(I)(1) and MRE 2.116(C)(6)." (Emphasis omitted.) The circuit court did so on July 8, 2015, dismissing all of the parties' claims with the exception of Video King's "wrongful injunction claim and any related damages." The circuit court reasoned that dismissal of all other claims under MCR 2.116(C)(6) was "appropriate for purposes of fairness, judicial economy, and to protect . . . the parties from having to attempt to comply with inconsistent rulings from two different state courts."

The next day, Video King filed a motion seeking a declaration that it was wrongfully enjoined, plus damages, costs, and attorney fees. Video King argued that, aside from wrongfully seeking an injunction against it, plaintiffs had filed frivolous pleadings and maintained a frivolous action. Video King requested an evidentiary hearing to allow it to substantiate its position. In response, plaintiffs argued that Video King had failed to state an actionable claim that it was "wrongfully" enjoined or to demonstrate a genuine issue of material fact regarding its wrongful injunction claim, and consequently summary disposition of that claim was appropriate under MCR 2.116(C)(8) and (C)(10). Ultimately, the circuit court held in plaintiffs' favor, dismissing Video King's wrongful injunction claim pursuant to MCR 2.116(C)(8) and (C)(10). The circuit court reasoned that the injunction it had issued was reciprocal, lasted "a short period of time," was merely intended to maintain the status quo, and did not harm the parties; thus, it was not "wrongful."

These appeals ensued.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision regarding a motion for summary disposition, *Heaton v Benton Constr Co*, 286 Mich App 528, 531; 780 NW2d 618 (2009), reviewing the record as it existed at the time of the trial court's ruling, *Quinto v Cross & Peters Co*, 451 Mich 358, 366 n 5; 547 NW2d 314 (1996); *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 313 n 4; 660 NW2d 351 (2003). "Whether the Legislature has abrogated, amended, or preempted the common law is a question of legislative intent." *Velez v Tuma*, 492 Mich 1, 11; 821 NW2d 432 (2012). That question, like statutory interpretation, is a question of law reviewed de novo. *Id*. On the other hand, we generally "review the grant or denial of a discovery motion for an abuse of discretion," reviewing questions regarding the interpretation of the related court rules de novo. *D'Alessandro Contracting Group, LLC v Wright*, 308 Mich App 71, 76; 862 NW2d 466 (2014). "A trial court abuses its discretion when it chooses an outcome falling outside the range of

reasonable and principled outcomes, or when it makes an error of law." *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 263; 833 NW2d 331 (2013) (footnotes omitted).

## III.  ANALYSIS

## A.  PREEMPTION

We turn now to the claims of error raised by plaintiffs.  They contend that the circuit court erred by holding that plaintiffs' common-law unfair competition claim was preempted by the Michigan uniform trade secrets act (MUTSA), MCL 445.1901 *et seq*.  We agree.

"The common law, which has been adopted as part of our jurisprudence, remains in force until amended or repealed." *Wold Architects and Engineers v Strat*, 474 Mich 223, 233; 713 NW2d 750 (2006).  The Legislature may abrogate the common law, but to do so it must "speak in no uncertain terms." *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006).

> In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter. [*Id.* (citations omitted).]

"We will not lightly presume that the Legislature has abrogated the common law." *Velez*, 492 Mich at 11.

MUTSA addresses the question of preemption at MCL 445.1908 ("Displacement of other civil remedies"), which states that MUTSA  generally "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret," but it does not displace "[o]ther civil remedies that are not based upon misappropriation of a trade secret."  Under MUTSA, "misappropriation" of a "trade secret"[1] means

---

[1] The phrase "trade secret" is statutorily defined by MUTSA as

> a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:
>
> (*i*) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (*ii*) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  [MCL 445.1902(d).]

-6-

either of the following:

(*i*) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

(*ii*) Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:

(A) Used improper means to acquire knowledge of the trade secret.

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

It has been recognized from common law, on the other hand, that unfair competition encompasses more than just misappropriation. See *In re MCI Telecom Corp Complaint*, 240 Mich App 292, 312; 612 NW2d 826 (2000) ("[T]he common-law doctrine of unfair competition was ordinarily limited to acts of fraud, bad-faith misrepresentation, misappropriation, or product confusion."). Thus, MUTSA does not preempt *all* common-law unfair competition claims, only those that are based on misappropriation of "trade secrets" as defined by MUTSA. The pertinent question, then, is whether plaintiffs' unfair competition claim was based on misappropriation alone or also on fraud, bad-faith misrepresentation, or product confusion.

In their original complaint, plaintiffs premised their claim for common-law unfair competition upon three distinct factual allegations: (1) that Video King had "utilized Plaintiffs' confidential information in the creation of" OMNI, (2) that Video King had "sold O[MNI] based on its similarity to" EPIC, and (3) that "in at least one instance," Video King had "falsely represented to a potential customer that a" bingo hall was "already using" OMNI "when, in fact, that hall was using EPIC." Given the breadth of the definition of "confidential information" under the 2005 agreement, the first of the above grounds for plaintiffs' unfair competition claim was preempted by MUTSA. Video King's alleged use of plaintiffs' confidential information constituted misappropriation of a trade secret under MUTSA. The second and third grounds, however, are unrelated to misappropriation of trade secrets, and hence are not displaced by MUTSA. See MCL 445.1908. By deciding otherwise, and holding that plaintiffs' common-law unfair competition claim was entirely preempted by MUTSA, the circuit court erred. Its error in that regard led it to erroneously grant Video King summary disposition of plaintiffs' common-law unfair competition claim.

## B. SUMMARY DISPOSITION UNDER MCR 2.116(C)(6)

Plaintiffs contend that the circuit court erred by sua sponte dismissing the remainder of this action—aside from Video King's wrongful injunction claim—under MCR 2.116(C)(6). We vacate the circuit court's ruling in this regard and remand.

> [S]ummary disposition cannot be granted under MCR 2.116(C)(6) unless there is another action between the same parties involving the same claims currently initiated and pending at the time of the decision regarding the motion for summary disposition. And, if there is another action pending and the party opposing the motion under MCR 2.116(C)(6) raises a question regarding whether that suit can and will continue, a stay of the second action pending resolution of the issue in the first action, should be granted. [*Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999).]

For purposes of the instant inquiry, a pending appeal is equivalent to a pending action. See *Darin v Haven*, 175 Mich App 144, 151; 437 NW2d 349 (1989), citing *Maclean v Wayne Circuit Judge*, 52 Mich 257, 259; 18 NW 396 (1884) ("It is a familiar principle that when a court of competent jurisdiction has become possessed of a case its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of; and no court of co-ordinate authority is at liberty to interfere with its action."). Moreover, for purposes of MCR 2.116(C)(6), the "other action" need not be one pending in this state's courts or a federal court situated in this state; rather, an action pending between the parties in a foreign jurisdiction can warrant summary dismissal of a subsequent action filed here. *Valeo*, 272 Mich App at 319. However, "when dismissing a case under MCR 2.116(C)(6)" because of a pending foreign action, "it might be appropriate . . . to do so without prejudice in the event that the foreign court's jurisdiction is disputed, an issue such as forum non conveniens arises, or the case is dismissed on grounds other than its merits." *Id.*

Plaintiffs do not take issue with the circuit court's finding that the Nebraska action "involved the exact same claims and parties involved in this present case"; rather, plaintiffs contend that enforcement of MCR 2.116(C)(6) under the facts of this case was inconvenient for the parties and contrary to the "spirit" of MCR 2.116(C)(6) and MCR 1.105 ("These rules are to be construed to secure the just, speedy, and economical determination of every action and to avoid the consequences of error that does not affect the substantial rights of the parties."). Plaintiffs' argument in that regard is directly contrary to the fundamental principles by which this Court construes our court rules. The first step in construing a court rule is not an examination of the underlying policy considerations. On the contrary, "[t]his court uses the principles of statutory construction when interpreting a Michigan court rule," beginning "by considering the plain language of the court rule in order to ascertain its meaning." *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). "[W]hen the language of the rule is unambiguous, it must be enforced as written." *Acorn Investment Co v Mich Basic Prop Ins Ass'n*, 495 Mich 338, 350; 852 NW2d 22 (2014).

Under the unambiguous language of MCR 2.116(C)(6), summary disposition is appropriate whenever "there is another action between the same parties involving the same claims currently initiated and pending at the time of the decision regarding the motion for summary disposition." *Fast Air*, 235 Mich App at 549. Plaintiffs do not dispute the circuit court's finding that the same parties and claims were involved in the pending Nebraska action.

-8-

Hence, plaintiffs have not demonstrated that the circuit court's reliance on MCR 2.116(C)(6) was erroneous.

Furthermore, the circuit court's construction and application of MCR 2.116(C)(6) is not at loggerheads with its underlying purpose. MCR 2.116(C)(6) "is a codification of the former plea of abatement by prior action, the purpose of which was to protect parties from the harassment of new suits." *Valeo*, 272 Mich App at 313. The plain language of the rule is "in keeping" with that purpose, i.e., the prevention of "litigious harassment involving the same question and claims as those presented in pending litigation." *Id.* at 319-320 (quotation marks and citation omitted). Viewed in that context, the circuit court's ruling did not contravene the purpose of MCR 2.116(C)(6); rather, it was an effort to achieve that purpose.

Having concluded that the circuit court's ruling under MCR 2.116(C)(6) is on its face proper, nevertheless, we are compelled to remand to the circuit court for additional fact finding. A circuit court's ruling under MCR 2.116(C)(6) is reviewed de novo based on the record as it existed at the time the ruling was made, *Quinto*, 451 Mich at 366 n 5. We are constrained to observe that the circuit court made its ruling *after* it had already summarily disposed of all of plaintiffs' claims and had stricken plaintiffs' amended complaint. Given the timing of its ruling, the circuit court's finding that this action involved the same claims as those involved in the Nebraska action may not have taken plaintiffs' previously dismissed claims into consideration at all. The record on appeal lacks specificity, not only of the specific claims being dismissed under MCR 2.116(C)(6), but also of the claims pending in the Nebraska action at any given time. Therefore, this Court is unable to conduct the appropriate de novo review of the record in order to determine whether MCR 2.116(C)(6) would have been a valid ground for summary disposition of plaintiffs' claims. See *Meridian Mut Ins Co v Mason-Dixon Lines, Inc*, 242 Mich App 645, 651; 620 NW2d 310 (2000) ("[W]e note that *where the record permits review under the correct subpart*, the trial court's ruling on a motion for summary disposition under a different subpart does not preclude appellate review according to the correct subpart.") (emphasis added). As such, we remand with instructions that, before any other proceedings take place, the circuit court shall order the parties to make a record of what claims are then pending in the Nebraska action (or on appeal in Nebraska), and to subsequently address—on an individual basis—the issue of whether summary disposition of each claim involved in this action is appropriate under MCR 2.116(C)(6). In the event that there remains any uncertainty whether the Nebraska action will ultimately resolve all of the claims involved in this action on their merits, the circuit court should stay the proceedings below pending the outcome of the Nebraska action and any appellate proceedings arising out of it. See *Fast Air*, 235 Mich App at 549 ("[I]f there is another action pending and the party opposing the motion under MCR 2.116(C)(6) raises a question regarding whether that suit can and will continue, a stay of the second action pending resolution of the issue in the first action, should be granted."); see also *Valeo*, 272 Mich App at 319 ("[W]e note that it might be appropriate, when dismissing a case under MCR 2.116(C)(6), to

do so without prejudice in the event that the foreign court's jurisdiction is disputed, an issue such as forum non conveniens arises, or the case is dismissed on grounds other than its merits.").[2]

## C. TEMPORAL SCOPE OF DISCOVERY

Because the circuit court, on remand, may determine that summary disposition under MCR 2.116(C)(6) was not appropriate as to all claims in this action, we will also address plaintiffs' argument that the circuit court erred by unduly restricting the temporal scope of discovery. We agree in part.

"While Michigan is strongly committed to open and far-reaching discovery, a trial court must also protect the interests of the party opposing discovery so as not to subject that party to excessive, abusive, or irrelevant discovery requests." *In re Estate of Hammond*, 215 Mich App 379, 386; 547 NW2d 36 (1996) (citations omitted). In pertinent part, MCR 2.302 provides,

> (A) Availability of Discovery.
>
> (1) After commencement of an action, parties may obtain discovery by any means provided in subchapter 2.300 of these rules.
>
> * * *
>
> (B) Scope of Discovery.
>
> (1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party, including the existence, description, nature, custody, condition, and location of books, documents, or other tangible things, or electronically stored information and the identity and location of persons having knowledge of a discoverable matter. It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
>
> * * *
>
> (C) Protective Orders. On motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . .

---

[2] Alternatively, should the Nebraska action have already been fully decided on the merits, the circuit court should consider the potential applicability of issue preclusion (i.e., collateral estoppel) and claim preclusion (i.e., res judicata).

Here, the parties' competing breach of contract claims were largely premised upon the 2005 agreement between Melange and Video King. Notably, the preamble to the 2005 agreement references events that occurred *before* that agreement was executed, including the fact that Melange had previously provided Video King with information, including software. Moreover, the language the parties used in the "Confidentiality" provision of the 2005 agreement indicates that "Confidential Information" under that agreement includes information conveyed between the parties both before and after the agreement's effective date:

> Each party acknowledges and accepts that the Confidential Information that it *has received* through any means or form and *at any time*, as well as that it *may receive in the future* under this Agreement and its Exhibits, is and shall continue to be the exclusive property of the party issuing such Confidential Information. . . . [Emphasis added.]

Given such contractual language and the claims asserted by the parties, pre-January 28, 2005 discovery might well have been relevant to the subject matter involved in the pending action—on this record, with the circuit court limiting discovery so early in the proceedings, it is difficult to ascertain the relevance of the documents that *might* have been discovered had the circuit court ruled differently. Because "confidential information" under the 2005 agreement includes information received "at any time," and the agreement acknowledges that the parties provided one another with information before the agreement was executed, discovery regarding what information was provided, and when, was directly relevant to the contractual claims and defenses at issue in this case. Indeed, on appeal Video King tacitly recognizes the relevance of such events, arguing that it was entitled to use any information it received from Melange before the agreement was executed to develop OMNI because such information was not confidential. Moreover, any undue burden or expense attendant to Video King's production of pre-January 28, 2005 discovery could have been resolved by proper protective orders. Nevertheless, based entirely on the date that VKGS acquired Video King, the circuit court set a hard limit precluding the discovery of *all* documents created before January 28, 2005, regardless of the potential relevance of such documents. By so ruling, the circuit court abused its discretion.[3]

On remand, if the circuit court determines that a stay of the proceedings or summary disposition of all claims under MCR 2.116(C)(6) is unwarranted, the circuit court will allow the parties to conduct reasonable pre-January 28, 2005 discovery, but only to the extent that such discovery is relevant to the breach of contract claims then remaining and is reasonably calculated to lead to the discovery of admissible evidence.

---

[3] Because of the timing of the circuit court's improper discovery ruling, we are unable to determine what impact—if any—that ruling had on many of the circuit court's subsequent decisions. Consequently, we are unable to consider several of the claims of error raised by the parties on appeal.

## IV. CONCLUSION

We reverse the circuit court's contested discovery ruling, vacate its subsequent order granting summary disposition under MCR 2.116(C)(6), and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. The parties may not tax costs under MCR 7.219, none having prevailed in full.

/s/ Stephen L. Borrello
/s/ Kurtis T. Wilder
/s/ Brock A. Swartzle