KELLY, J.
We granted leave in this case to determine: whether “common-law” arbitration should be deemed preempted by the Michigan arbitration act (MAA), MCL 600.5001 et seq., and, if common-law arbitration continues to exist, (1) what language must be included in an agreement to make it subject to the rules of statutory arbitration; (2) whether common-law arbitration agreements should be unilaterally revocable; and (3) whether the arbitration in this case, if it was common-law arbitration, became statutory arbitration because of the conduct of the parties during the arbitration process.
We hold that common-law arbitration is not preempted by the MAA and that common-law arbitration continues to exist in Michigan jurisprudence. In addition, common-law arbitration agreements continue to be unilaterally revocable before an arbitration award is made. And the common-law arbitration in this case was not transformed into statutory arbitration because of the conduct of the parties during the arbitration process.
We affirm the Court of Appeals determination that the trial court erred in granting defendants’ motion for summary disposition and in denying plaintiffs motion to vacate the arbitration award.
THE UNDERLYING FACTS
In June 2000, plaintiff Wold Architects and Engineers, an architectural engineering firm, entered into an agreement to purchase the assets of defendant Strat *226 and Associates, Inc. (Strat, Inc.), an architectural firm specializing in government and institutional work. Defendant Thomas Strat (Strat) is the sole owner of Strat, Inc. As part of the purchase agreement, Strat entered into a five-year employment agreement with Wold. Under the agreement, he was expected to develop business and consult. His compensation was based primarily on the profitability of Wold’s Troy, Michigan, office. The employment agreement included an arbitration provision:
The parties agree to submit any disputes arising from this Agreement to binding arbitration. The arbitrator shall be selected through the mutual cooperation between the representatives or counsel for the respective parties, failing agreement on which may be referred by either party to the Detroit Regional Office of the American Arbitration Association for appointment of an arbitrator and processing under their Voluntary Labor Arbitration Rules. [Employment/Incentive Compensation Agreement, p 5.]
The asset purchase agreement, unlike the employment agreement, did not include an arbitration agreement. The purchase agreement transferred, among other assets, the renovation then in progress of the Macomb County courthouse. At the time of contracting, Strat, Inc. had already billed the county for 53 percent of the total project fee. Wold’s senior accounting staff carefully reviewed the books and status of the project. Also, Wold had the opportunity to inspect the status of the project.
After the parties entered into the purchase agreement, Wold concluded that, rather than 47 percent of the project remaining in need of completion, 70 percent was incomplete. It began to withhold payments due under the employment agreement on the basis that Strat, Inc., had overstated the percentage of completion of the courthouse project and other projects.
*227 Strat filed a demand for arbitration with the American Arbitration Association (AAA) on January 22,2002, claiming that Wold owed him payments under the employment agreement. The AAA wrote both parties on February 12, 2002, indicating that its commercial dispute resolution procedures would govern all disputes rather than the voluntary labor arbitration rules specified in the contract. The AAA made the change because it deemed the commercial dispute procedures more apt for the situation at hand. They state that judgment on the arbitration award may be entered in the circuit court. The parties did not agree to this change in writing, and no writing signed by the parties exists that contains such a provision.
In March, Wold filed a counter-demand for arbitration claiming that Strat had billed too much for the courthouse project. The parties then selected an arbitrator who held a prehearing conference in July. Document exchanges and witness disclosures followed. Wold agreed to an administration schedule that included an evidentiary hearing in October 2002.
Wold sent letters to the AAA in August and September questioning the scope of the arbitration. On October 8, it revoked its agreement to arbitrate, claiming that Strat had asserted claims that more properly fell under the asset purchase agreement, which contained no arbitration clause. It objected to use of the employment agreement arbitration clause because it created “a mess here that needs to be cleaned up.”
On October 11, the arbitrator decided that the arbitration hearing would proceed as scheduled. It was his opinion that the arbitration that was agreed to in the employment agreement could not be revoked unilaterally.
*228 Wold filed the instant action in Oakland Circuit Court seeking a declaratory judgment that (1) the pending arbitration was invalid because the asset purchase agreement did not contain an arbitration provision, and (2) the arbitration provision in the employment agreement was unilaterally revocable because it lacked the requisite language to be a statutory agreement that is nonrevocable. The complaint alleged that defendants either negligently or innocently misrepresented the extent of the completion of the courthouse project, which amounted to fraud in the inducement. Wold also requested a preliminary injunction to prevent the scheduled arbitration.
At a hearing, the circuit court denied Wold’s motion to enjoin the arbitration and for summary disposition. It found that each of the claims submitted to the AAA could be arbitrated without irreparable harm to Wold. It ruled that the parties had included in their agreement all language required to qualify for statutory arbitration.
The arbitration proceeded as scheduled. On November 27, the arbitrator issued an award of $104,559.27 to Strat and declared, “This award is in full settlement of all claims and counter-claims submitted to this arbitration. All claims not expressly granted herein are hereby denied.”
Defendants then brought a motion in circuit court for summary disposition pursuant to MCR 2.116(C)(10). They contended that there was no longer a genuine issue of material fact concerning whether the parties had entered into a valid arbitration agreement. Wold moved to vacate the award, claiming that it had revoked the agreement to arbitrate.
The trial court granted defendants’ motion for summary disposition and denied Wold’s motion to vacate the award. Wold appealed to the Court of Appeals, *229 contending, among other things, that the trial court had erred in finding that the employment agreement provided for binding statutory arbitration. The Court of Appeals held that the trial court had erred in enforcing the common-law arbitration agreement that Wold had revoked before the award was announced. Accordingly, the Court of Appeals reversed the judgment of the trial court and remanded the case for further proceedings. Wold Architects & Engineers, Inc v Strat, unpublished opinion per curium of the Court of Appeals, issued June 17, 2004 (Docket No. 246874). We granted leave to appeal. 472 Mich 908 (2005).
STATUTORY ARBITRATION
We review a trial court’s determination regarding a motion for summary disposition de novo. Fane v Detroit Library Comm, 465 Mich 68, 74; 631 NW2d 678 (2001). This case presents questions of law that are also reviewed de novo. American Alternative Ins Co, Inc v York, 470 Mich 28, 30; 679 NW2d 306 (2004).
Michigan has long recognized that a distinction exists between statutory and common-law arbitration. Clement v Comstock, 2 Mich 359 (1852); F J Siller & Co v Hart, 400 Mich 578, 581; 255 NW2d 347 (1977), citing Frolich v Walbridge-Aldinger Co, 236 Mich 425, 429; 210 NW 488 (1926). Statutory arbitration is provided for in MCL 600.5001 et seq. In order for an agreement to qualify for statutory arbitration, it must meet certain requirements:
(1) All persons, except infants and persons of unsound mind, may, by an instrument in writing, submit to the decision of 1 or more arbitrators, any controversy existing between them, which might be the subject of a civil action, except as herein otherwise provided, and may, in such submission, agree that a judgment of any circuit court shall be rendered upon the award made pursuant to such submission.
*230 (2) A provision in a written contract to settle by arbitration under this chapter, a controversy thereafter arising between the parties to the contract, with relation thereto, and in which it is agreed that a judgment of any circuit court may be rendered upon the award made pursuant to such agreement, shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the rescission or revocation of any contract. Such an agreement shall stand as a submission to arbitration of any controversy arising under said contract not expressly exempt from arbitration by the terms of the contract. Any arbitration had in pursuance of such agreement shall proceed and the award reached thereby shall be enforced under this chapter. [MCL 600.5001 (emphasis added).]
MCL 600.5011 divests parties of the power to unilaterally revoke agreements made pursuant to MCL 600.5001. It provides:
Neither party shall have power to revoke any agreement or submission made as provided in this chapter without the consent of the other party, and if either party neglects to appear before the arbitrators after due notice, the arbitrators may nevertheless proceed to hear and determine the matter submitted to them upon the evidence produced by the other party. The court may order the parties to proceed with arbitration. [Emphasis added.]
MCL 600.5025 provides:
Upon the making of an agreement described in section 5001, the circuit courts have jurisdiction to enforce the agreement and to render judgment on an award thereunder. The court may render judgment on the award although the relief given is such that it could not or would not be granted by a court of law or equity in an ordinary civil action.
Because MCL 600.5001(1) applies to agreements made when there is an existing controversy between the parties, it covers agreements to arbitrate that are made after a cause of action has accrued. By contrast, MCL 600.5001(2) covers agreements to arbitrate causes of action that have yet to accrue.
*231 The agreement in this case falls under MCL 600.5001(2), because that statute covers unaccrued claims. The agreement meets the first requirement of MCL 600.5001(2) because it is in writing. But, the agreement does not provide that a judgment of any circuit court may be rendered upon the award. Therefore, it does not qualify under MCL 600.5001(2) as an agreement providing for statutory arbitration, and it is not enforceable under MCL 600.5011 or MCL 600.5025.
COMMON-LAW ARBITRATION
When the parties’ agreement to arbitrate does not comply with the requirements of MCL 600.5001, the parties are said to have agreed to a common-law arbitration. Frolich, supra at 429. What characterizes common-law arbitration is its unilateral revocation rule. 4 Am Jur 2d, Alternative Dispute Resolution, § 94, p 148. This rule allows one party to terminate arbitration at any time before the arbitrator renders an award.
Although this Court first used the term “common law arbitration” as long ago as 1852,[1] it was not until 1890 that we specifically stated:
It is conceded that an agreement to submit all matters in controversy between parties to arbitration, and thus oust courts of their jurisdiction, is void, and may be repudiated by either party at any time before award is made. [Chippewa Lumber Co v Phenix Ins Co, 80 Mich 116, 120; 44 NW 1055 (1890) (emphasis deleted).][2]
*232 The Chippewa Court held that, when a common-law arbitration agreement exists solely as a condition precedent to filing suit, it does not divest the courts of jurisdiction. Therefore, it is valid and will be enforced. Id. at 121-122, citing Stephenson v Piscataqua Fire & Marine Ins Co, 54 Me 55 (1866).[3] This Court has not *233 changed the unilateral revocation rule since it decided Chippewa in 1890.
PREEMPTION
Given that we have long recognized common-law arbitration in Michigan, the next question is whether the Legislature preempted it when it enacted the MAA.
The common law, which has been adopted as part of our jurisprudence, remains in force until amended or repealed. Const 1963, art 3, § 7. Whether a statutory scheme preempts, changes, or amends the common law is a question of legislative intent. Millross v Plum Hollow Golf Club, 429 Mich 178, 183; 413 NW2d 17 (1987), citing Jones v Rath Packing Co, 430 US 519; 97 S Ct 1305; 51 L Ed 2d 604 (1977). In Millross we observed:
In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter. [Millross, supra at 183, citing 2A Sands, Sutherland Statutory Construction (4th ed), § 50.05, pp 440-441.]
Michigan courts have uniformly held that legislative amendment of the common law is not lightly presumed. Marquis v Hartford Accident & Indemnity (After Remand), 444 Mich 638, 652 n 17; 513 NW2d 799 (1994). In interpreting statutory language, courts must determine and give effect to the intent of the Legislature. In re MCI Telecom Complaint, 460 Mich 396, 411; 596 NW2d 164 (1999). The first step in ascertaining legislative intent is to look at the words of the statute itself. House Speaker v State Admin Bd, 441 Mich 547; 495 NW2d 539 (1993).
*234 In this case, the language of the MAA does not show an intention to abrogate common-law arbitration. It merely sets out guidelines indicating when agreements to arbitrate will be enforced.
Statutory and common-law agreements to arbitrate have long coexisted. 2 Michigan Law & Practice, 2d, Arbitration, § 1, p 504, citing Siller, supra. Frolich, supra, clarifies that statutory and common-law arbitrations coexist. Nothing in the MAA indicates that the Legislature intended to change this existing law.
The Legislature is presumed to know of the existence of the common law when it acts. Bennett v Weitz, 220 Mich App 295, 299; 559 NW2d 354 (1996). When wording the MAA, the Legislature could easily have stated an intent to abrogate common-law arbitration.
Defendants argue that the scheme set forth in MCL 600.5001 clearly evidences the Legislature’s intent to occupy the entire area of arbitration law. As previously observed, the MAA specifically covers two types of written agreements. MCL 600.5001(1) covers agreements to arbitrate a controversy that has already arisen, and MCL 600.5001(2) covers agreements to arbitrate possible future controversies. The statute does not refer to any other agreement, such as an oral agreement to arbitrate, which could survive our statute of frauds.[4] Moreover, the MAA explicitly removes from *235 its purview arbitration agreements made pursuant to “collective contracts between employers and employees or associations of employees in respect to terms or conditions of employment.” MCL 600.5001(3).
Also, importantly to this case, MCL 600.5011 specifically removes from its purview all agreements to arbitrate that do not conform to MCL 600.5001(1) or (2). For instance, the agreement in this case does not conform to MCL 600.5001(2) and is unenforceable under the MAA. Therefore, we conclude that the MAA, codified at MCL 600.5001 et seq., does not occupy the entire area of arbitration law and does not preempt common-law arbitration in Michigan.
Parties wishing to conform an agreement to MCL 600.5001(2) must put it in writing and require that a circuit court may render judgment upon the award made pursuant to the agreement. Otherwise, it will be treated as an agreement for common-law arbitration.
THE UNILATERAL REVOCATION RULE
Given that common-law arbitration exists in Michigan for agreements to arbitrate future controversies, we now turn to the question whether common-law arbitration agreements remain unilaterally revocable. The unilateral revocation rule was developed when courts were highly skeptical of arbitration. Many thought it to be against public policy for parties to divest the courts of jurisdiction. E E Trip Excavating Contractor, Inc v Jackson Co, 60 Mich App 221, 244; 230 NW2d 556 (1975).
*236 Some courts have criticized the rule suggesting that this Court should exercise its powers to change the common law and eliminate the unilateral right to revoke. Specifically, an opinion and a concurrence from the Court of Appeals have asked this Court to clear the rule from this state’s jurisprudence. Hetrick, supra; Tony Andreski, Inc v Ski Brule, Inc, 190 Mich App 343; 475 NW2d 469 (1991) (GRIFFIN, EJ., concurring). The decision in Hetrick and the concurrence in Andreski argue that the rule is an atavistic vestige of the past, supported only by public policy arguments over 100 years old:
“The heavily case-loaded courts are no longer jealous of their jurisdiction. Where the parties, by a fair agreement, have adopted a speedy and inexpensive means by which to have their disagreements adjusted, we see no public policy reasons for the courts to stand in their way. On the contrary we have a clear expression of public policy in the legislative enactments which provide for statutory arbitration.” [Andreski, supra at 350 (GRIFFIN, PJ., concurring), quoting E E Trip, supra at 246-247.]
Nonetheless, we are unpersuaded that the time is ripe to change Michigan’s common-law arbitration unilateral revocation rule. When the Legislature enacted the MAA, it created a method for binding arbitration that protects the rights of those who choose such arbitration. By not specifically abrogating the unilateral revocation rule, the Legislature chose to retain as well the protections that the rule offers. Farties entering into agreements to arbitrate future claims do not have full knowledge of what matters would be encompassed by the arbitration.
The unilateral revocation rule protects the right to bring suit when claims arise that a party did not anticipate and would not want handled outside the courts’ direct protection. The Legislature has deter *237 mined that public policy concerns do not require abrogation of the unilateral revocation rule, and we see no need to contravene that determination. See, e.g., Lowe v Estate Motors Ltd, 428 Mich 439, 467; 410 NW2d 706 (1987).
Second, the unilateral revocation rule leaves an option to parties entering into contracts in Michigan. As previously stated, parties agreeing to arbitrate claims that have not yet arisen may choose common-law arbitration specifically because of the unilateral revocation rule. The rule allows them flexibility in the event of a dispute. After a claim has arisen, the parties can arbitrate or not. If they prefer irrevocable arbitration, they can provide for it in their agreement or draft their agreement so that it provides for statutory arbitration.
Because of the long history and continuing utility of the unilateral revocation rule, we are unpersuaded of the need to overrule the rule. Hence, we affirm its existence as a useful part of Michigan jurisprudence.
CONDUCT OF THE PARTIES
We conclude that the issue whether the arbitration agreement here became statutory arbitration because of the conduct of the parties during the arbitration process must be answered in the negative.
The change from the voluntary labor arbitration rules to the commercial dispute resolution procedures did not transform the parties agreement from a common-law arbitration agreement to a statutory arbitration agreement. The basic requirement of MCL 600.5001 et seq. that the agreement must be made in writing is not met in this case. It is true that the parties acquiesced in using the commercial dispute resolution *238 procedures, but that does not change the fact that there is no written agreement containing the statutorily required language.
Under common-law arbitration, Wold had the right to withdraw from the arbitration process at any time until the arbitrator made an award. Therefore, Wold’s unilateral revocation of the arbitration process was in conformity with its right under common-law arbitration and with the parties’ agreement.
CONCLUSION
We hold that common-law arbitration is not preempted by the Michigan arbitration act, MCL 600.5001 et seq., and that common-law arbitration continues to exist in Michigan jurisprudence. Parties wishing to conform their agreements to MCL 600.5001(2) must put their agreements in writing and require that a circuit court may enforce them. Otherwise, their agreements will be treated as agreements for common-law arbitration. In addition, common-law arbitration agreements continue to be unilaterally revocable before an arbitration award is made. And the common-law arbitration in this case was not transformed into statutory arbitration because of the conduct of the parties during the arbitration process.
We affirm the decision of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.
Taylor, C.J., and Cavanagh, Weaver, and Markman, JJ., concurred with KELLY, J.

 Clement, supra.

 The Court’s use of “conceded” indicates that this was settled law in 1890 despite the nonappearance of the rule in any opinion by this Court before Chippewa. This is further shown by the decisions cited from other jurisdictions in Chippewa such as President, Managers & Co of Delaware & Hudson Canal Co v Pennsylvania Coal Co, 50 NY 250 (1872), in which the New York Court of Appeals stated:
*232 [T]he rule that a general covenant to submit any differences that may arise in the performance of a contract, or under an executory agreement, is a nullity, is too well established to be now questioned .... [Id. at 258.]

 We disagree with the Court of Appeals dicta in Hetrick v David A Friedman, DPM, PC, 237 Mich App 264, 273; 602 NW2d 603 (1999), that Chippewa’s discussion of the revocation rule is dicta. “Dicta” is defined as follows:
“ ‘Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand, are, however illuminating, but obiter dicta and lack the force of an adjudication.’ ” [Rowe v Montgomery Ward & Co, Inc, 437 Mich 627, 719 n 101; 473 NW2d 268 (1991) (Levin, J., dissenting), quoting Hett v Duffy, 346 Mich 456, 461; 78 NW2d 284 (1956), quoting a headnote from People v Case, 220 Mich 379; 190 NW 289 (1922).]
The issue presented in Chippewa was whether the arbitration agreement between the parties was enforceable. Thus, a statement of the law regarding the enforceability of a common-law arbitration agreement was necessary to the determination of the case. Therefore, it is not dicta.
We also disagree with the Court of Appeals dicta in Hetrick, supra, that Norton v Hayden, 109 Mich 682; 67 NW 909 (1896), contradicts Chippewa. In Norton, the issue presented to the Court was whether the “making and delivery of an award [was] a condition precedent to the right of action[.]” Id. at 684. The plaintiff argued that, just because the agreement was a common-law arbitration, it was revocable at any time. Id. at 685. The Court disagreed and stated, “We must construe the parties contract as the parties have made it.” Id. Viewed in isolation, the statement appears to contradict Chippewa. However, on closer reading, the Court is merely stating that it must interpret the contract to determine if the parties made arbitration a condition precedent to bringing an action at law. The Chippewa Court held that agreements are enforceable in which arbitration is a condition precedent to bringing an action at law. Therefore, Norton is consistent with Chippewa’s holding.

 MCL 566.132 provides in relevant part:
(1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:
(a) An agreement that, by its terms, is not to be performed within 1 year from the making of the agreement.
*235 Many, if not all, agreements to arbitrate, by their terms, could be performed within one year from the making of the contract. This is especially true under MCL 600.5001(1). Therefore, the statute of frauds would not bar oral agreements to arbitrate that by their terms could be performed within one year of the making of the agreements.