*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEAN McMASTER,

        Plaintiff-Appellant,

v

DTE ENERGY COMPANY,

        Defendant,

and

DTE ELECTRIC COMPANY,

        Defendant-Appellee,

and

FERROUS PROCESSING AND TRADING
COMPANY d/b/a FERROUS PROCESSING
AND TRADING CO,

        Defendant.

UNPUBLISHED
July 2, 2020

No. 339271
Oakland Circuit Court
LC No. 15-147414-NO

ON REMAND

Before: JANSEN, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

This case is before us on remand from our Supreme Court "for application of the law of ordinary negligence and for consideration of the issues raised by the parties on the question of the defendant's legal duty."[1]  Again, we affirm the trial court's grant of summary disposition to defendant DTE.

## I. BACKGROUND

---

[1] *McMaster v DTE Electric Company*, ___ Mich ___; 933 NW2d 42 (2019).

Our previous opinion summarized the facts of this case as follows:

DTE contracted with Ferrous Processing & Trading Company ("Ferrous") to have containers of scrap picked up from DTE facilities and taken to Ferrous' salvage yard. Ferrous subcontracted with P&T Leasing Company ("P&T") to pick up the scrap containers and deliver them to Ferrous. Plaintiff was employed by P&T as a driver. This case arises out of injuries sustained by plaintiff when a large steel pipe rolled out of a container and struck him in the leg resulting in the amputation of his leg.

On the morning of October 14, 2015 plaintiff arrived at DTE's Belle River Power Plant to pick up a container of demolition scrap and deliver it to Ferrous' salvage yard. Plaintiff inspected the container prior to hauling it away and observed a large industrial blue steel pipe inside the container. The pipe was parallel to and up against the back door of the container. Plaintiff could have requested that a DTE crane operator relocate or remove the pipe from the container but did not do so. Plaintiff used his truck's hydraulics to lift the container onto his trailer, secured the container to his truck and departed the Belle River Power Plant for the Ferrous facility in Pontiac. Upon plaintiff's arrival at the Ferrous salvage yard, he took the truck to be weighed, then drove to the inspection area to meet with the Ferrous road inspector. The inspector told plaintiff where to take the container and plaintiff drove to the specified dumping location. Once he arrived at the specified location, he got out of the truck and walked backed to where the container was secured to his flat-bed trailer. Plaintiff kept the truck engine running because it also controlled the hydraulic system that was necessary to lift the container up to the 35-40 degree angle needed to dump the container. He cracked the container door partially open to see if any materials would fall out. When nothing fell out, he felt it was safe to continue and proceeded to open the door all of the way so that the materials could be dumped out. However, before plaintiff was able to dump out the contents of the container, the Ferrous road inspector had second thoughts about where this particular load should be dumped and he and another Ferrous employee decided that it should be taken to another area in the facility. Plaintiff and the two Ferrous employees talked for about 5-10 minutes about where the container should be dumped while standing behind the wide open door of the container with the truck's engine running. Once the decision had been made as to where to take the container, plaintiff proceeded to return to his truck in order to shut off the hydraulics so that he could take the container to another area as instructed. As plaintiff walked to the driver side of the truck, the blue pipe rolled out of the container and struck plaintiff in the leg resulting in amputation of his leg.

Plaintiff filed suit against defendants DTE and Ferrous alleging negligence against both. Both defendants answered, denying liability and moving for summary disposition under MCR 2.116(C)(10) asserting that they did not owe plaintiff any duty of care and that plaintiff was not able to meet his burden of proof as to causation. The trial court held a hearing on both motions for summary disposition on January 4, 2017 and while it denied the motion brought by Ferrous, it granted DTE's motion concluding that there was neither evidence of a breach of duty nor

proximate causation. Ferrous and the plaintiff subsequently entered into a stipulated order of dismissal on June 28, 2017. The instant appeal against defendant DTE followed. [*McMaster v DTE Electric Company*, unpublished opinion per curiam of the Court of Appeals, entered November 8, 2018 (Docket No. 339271).]

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). [*Id*. at 120].

Issues of statutory interpretation are also reviewed de novo. *Ford Motor Credit Co v Detroit*, 254 Mich App 626, 628; 658 NW2d 180 (2003).

## B. ANALYSIS

"To establish a prima facie case of negligence, plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Finazzo v Fire Equip Co*, 323 Mich App 620, 635; 918 NW2d 200 (2018).

## 1. DUTY

"Contractors have a common-law duty to perform their work with ordinary care so as not to unreasonably endanger employees of other subcontractors or anyone else lawfully on the worksite." *Id*. at 634. We previously decided that plaintiff, as an employee of a sub-contractor, was owed the duty of reasonable care. *McMaster v DTE Energy Co*, unpublished per curiam opinion of the Court of Appeals, issued Nov 8, 2018 (Docket No. 339271), p 2. See *Clark v Dalman*, 379 Mich 251, 262; 150 NW2d 755 (1967) ("The general duty of a contractor to act so as not to unreasonably endanger the well-being of employees of either subcontractors of inspectors, or anyone else lawfully on the site of the project, is well settled.") We revisit that holding on remand as directed.

The defendant argues that the common law duty which was owed to plaintiff under the common law was abrogated by the passage of MCL 480.11a. Under MCL 480.11a, Michigan adopted the federal Motor Carrier Safety Regulations as provided by 49 CFR 392.9. *DOT v Initial Transport, Inc*, 276 Mich App 318, 323; 740 NW2d 720 (2007), rev'd in part on other grounds 481 Mich 862 (2008). The relevant portion of 49 CFR 392.9 states:

(a) General. A driver may not operate a commercial motor vehicle and a motor carrier may not require or permit a driver to operate a commercial motor vehicle unless—

(1) The commercial motor vehicle's cargo is properly distributed and adequately secured . . .

* * *

(b) [T]he driver of a truck or truck tractor must—

(1) Assure himself/herself that the provisions of paragraph (a) of this section have been complied with before he/she drives that commercial motor vehicle;

(2) Inspect the cargo and the devices used to secure the cargo within the first 50 miles after beginning a trip and cause any adjustments to be made to the cargo or load securement devices as necessary, including adding more securement devices, to ensure that cargo cannot shift on or within, or fall from the commercial motor vehicle . . . [49 CFR 392.9(a)(1) and (b)(1)].

Noting that there is no Michigan case addressing this issue, defendant asks us to be guided by the United States Court of Appeals for the Sixth Circuit's holding in *Rector*, that "[w]hile not dispositive, [CFR 392.9(b)] is indicative of the proper allocation of duty as between a common carrier and a shipper for the proper loading of goods." *Rector v Gen Motors Corp*, 963 F2d 144, 147 (CA 6, 1992).

Addressing the doctrine of abrogation in *Dawe v Dr Reuven Bar-Levav & Assoc, PC*, 485 Mich 20; 780 NW2d 272 (2010), the Supreme Court wrote:

The common law remains in force until modified. *Wold Architects & Engineers v. Strat*, 474 Mich. 223, 233, 713 N.W.2d 750 (2006). The abrogative effect of a statutory scheme is a question of legislative intent, and "legislative amendment of the common law is not lightly presumed." *Id*. Rather, the Legislature "should speak in no uncertain terms" when it exercises its authority to modify the common law. *Hoerstman Gen. Contracting, Inc. v. Hahn*, 474 Mich. 66, 74, 711 N.W.2d 340 (2006). Additionally, "[t]he Legislature is presumed to know of the existence of the common law when it acts." *Wold Architects*, 474 Mich. at 234, 713 N.W.2d 750. [*Dawe*, 485 Mich at 28].

The legislature has the power to amend the common law.

In *Dawe*, the Court found that the legislature did not intend to repeal the common law because it addressed only one aspect of a psychiatrist's duties to patients. The defendant argues to this Court that by adopting the part of the CFR which only addresses the duties of a carrier, the legislature implicitly abrogated any shipper duty of care, citing the rule of statutory construction:

*expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another).[2] Such is not always the case, however. Two years after *Dawe*, the Supreme Court in *Velez v Tuma*, 492 Mich 1; 821 NW2d 432 (2012), found that even an express repeal of a statute that acknowledged the common law is not always evidence of intent to abrogate the common law:

> We cannot conclude that the Legislature intended to abolish the common-law setoff rule in the context of joint and several liability medical malpractice cases. While the pertinent statutes are silent with respect to the application of the common-law setoff rule, we cannot agree with plaintiff that the repeal of the statutory setoff, former MCL 600.2925d(b), by 1995 PA 161 demonstrates a clear intent to abrogate the common-law rule. Plaintiff's argument ignores the fact that the repeal of former MCL 600.2925d(b) was but one part of comprehensive tort-reform legislation and that there is no conflict between the common-law rule and the current legislation that would prevent the setoff's application. [*Id*. at 12].

The *Velez* Court noted that there were several portions of "tort reform" legislation that continued to use the omitted concept (setoff for joint and several liability). Unlike the physician's duty to patients in *Dawe*, there are no other tort duties that flow from a shipper to a carrier. In contrast to *Velez* where numerous statutes addressed calculations of tort damages, there are no other statutes that proscribe the manner in which a load of this kind was to be stacked or secured, or which set forth a duty for which noncompliance could support an inference of a breach of duty. We find that the adoption of MCL 480.11a abrogated the shipper's common law duty of ordinary care.

Alternatively, if the legislature did not intend to eliminate the common law duty of care, it certainly expressed an intent to modify it significantly so as to limit the circumstances where a carrier is owed a duty by a shipper to circumstances where the shipper is in a superior position to appreciate and protect against the risk. This was articulated as the "shipper's exception" to this duty, as stated by the United States Court of Appeals for the Fourth Circuit in *United States v Savage Truck Line, Inc*, 209 F2d 442 (CA 4, 1953):

> The primary duty as to the safe loading of property is therefore upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper. [*Id*. at 444].

Just as the legislature is presumed to have known about the common law sharing of duties, it is presumed to have been aware of the shipper's exception or *Savage* rule which preceded Michigan's adoption of MCL 480.11a.

The shipper's exception, however, does not salvage the plaintiff's case. The facts viewed in the light most favorable to the plaintiff reveal that he did in fact examine the load several times. Accepting his expert's testimony that it was the manner of loading, not the vibration or the process

---

[2] See e.g. *Detroit City Council v Detroit Mayor*, 283 Mich App 442, 456; 770 NW2d 117 (2009).

of unloading, that occasioned plaintiff's tragic injury, there is no evidence that anything was "hidden". The pipes and their arrangement in the truck bed were readily observable and in plain sight. Therefore, even under the shipper's exception the defendant did not owe a duty to the plaintiff.

Having concluded that no duty was owed by the defendant to the plaintiff we need not address arguments as to the other elements of negligence. Accordingly, the trial court did not err in granting the defendant summary disposition.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens