*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUVARCHALA DEVI CHIRAVURI, M.D.,

UNPUBLISHED
September 11, 2025
9:54 AM

Plaintiff-Appellee,

v

No. 373389
Court of Claims
LC No. 24-000023-MZ

UNIVERSITY OF MICHIGAN, UNIVERSITY OF
MICHIGAN BOARD OF REGENTS, GEORGE
MASHOUR, M.D., and LORI RIEGGER, M.D.,

Defendants-Appellants.

Before: LETICA, P.J., and RICK and BAZZI, JJ.

PER CURIAM.

In this appeal involving the Court of Claims Act (COCA), MCL 600.6401 *et seq*., and the
Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*., defendants, the University of
Michigan, the University of Michigan Board of Regents (collectively, "UM"), George Mashour,
M.D., and Lori Riegger, M.D., appeal as of right the Court of Claim's order granting in part, and
denying in part, their motion for summary disposition under MCR 2.116(C)(7) (immunity granted
by law) and MCR 2.116(C)(8) (failure to state a claim on which relief can be granted). We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff, a 53-year-old woman and a first-generation Indian immigrant, is presently
employed as a clinical associate professor at the Department of Anesthesiology of "Michigan
Medicine," the health system of UM, and she is the only BIPOC[1] woman to hold the position.
Plaintiff began her fellowship at Michigan Medicine in pediatric anesthesiology in 2000, she was
appointed associate program director in 2007, and she was promoted to pediatric anesthesiology
fellowship program director in 2012, a position plaintiff maintained for over 10 years. During her
tenure with Michigan Medicine, she developed protocols for the fetal anesthesia program and

---

[1] Black, Indigenous, or person of color.

served as that program's first director. Plaintiff was further promoted to associate professor in 2020 because of her professional successes and positive performance reviews.

In March 2022, plaintiff administered a noncontrolled pain medication intravenously to a younger white faculty member experiencing significant pain.[2] This action was the "only event of note" in plaintiff's Michigan Medicine employment record. Plaintiff received a notice of nonreappointment on November 8, 2022, from Dr. Mashour, stating plaintiff "no longer represented Michigan Medicine values," resulting in the loss of her pediatric anesthesiology fellowship program directorship and clinical directorship of the operating rooms. Plaintiff subsequently filed a faculty grievance contesting her nonreappointment in January 2023, and the Grievance Hearing Board rendered a final decision in plaintiff's favor in September 2023, determining that the nonreappointment was arbitrary and capricious. Nevertheless, plaintiff remains subject to a performance improvement plan, "exacerbating the embarrassment and shame of being singled out for termination as the only woman of color Associate Professor in anesthesiology," and she has not been restored as the pediatric anesthesiology fellowship program director or clinical director of the operating rooms. Rather, plaintiff was replaced in the cited positions by less experienced male or white colleagues.

On November 7, 2023, plaintiff filed a notice of intention to file claim against defendants in the Court of Claims alleging violations of the federal Equal Protection Clause, Title IX, Title VII, the federal Age Discrimination in Employment Act (ADEA), 29 USC 621 *et seq*., and the ELCRA. Plaintiff contended that defendants subjected plaintiff to discrimination on the basis of her sex, race, national origin, and age, resulting in "irreparable harm, injury, and damages, including, but not limited to, removal from her positions at [Michigan Medicine]; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation." Following the filing of various documents, motions, and orders, plaintiff filed an amended complaint in the Court of Claims, reiterating her previous contentions, but solely asserting violations of due process and the state Equal Protection Clause, sex and age discrimination contrary to the ELCRA, and breach of contract.

Defendants responded by moving for summary disposition pursuant to MCR 2.116(C)(7) and (C)(8), asserting that (1) plaintiff was required to file either a verified complaint with the Court of Claims or a notice of intention to file suit with the Court of Claims within six months after the event that gave rise to her claims, pursuant to MCL 600.6431(4) of the COCA, and (2) plaintiff failed to sufficiently plead viable sex and age discrimination claims. Following a hearing, the Court of Claims denied summary disposition of plaintiff's ELCRA claims, opining that pursuant to *Christie v Wayne State Univ*, 511 Mich 39; 993 NW2d 203 (2023), the one-year notice provision of MCL 600.6431(1) governed plaintiff's ELCRA claims, and there were sufficient allegations in plaintiff's complaint to support a legally cognizable claim of both sex and age discrimination in violation of the ELCRA. This appeal ensued.

---

[2] Plaintiff contends that the practice was neither prohibited in the pertinent Michigan Medicine bylaws nor subject to discipline when performed by other medical staff.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019). As previously explained by this Court:

> MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the ground that a claim is barred because of immunity granted by law. When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010) (citations omitted).]

This Court reviews de novo the interpretation of statutes and court rules, the availability of governmental immunity, and questions regarding jurisdiction. *Highland Park v State Land Bank Auth*, 340 Mich App 593, 598; 986 NW2d 638 (2022).

## III. ANALYSIS

Defendants argue that plaintiff's failure to comply with the requirements of MCL 600.6431(4) bars her ELCRA claims and that the trial court therefore erred by denying defendants' motion for summary disposition. We disagree.

Defendants are an instrumentality of the state. Const 1963, art 8, § 4; MCL 390.3; MCL 600.6419(7). "From the time of Michigan's statehood, this Court's jurisprudence has recognized that the state, as sovereign, is immune from suit unless it consents, and that any relinquishment of sovereign immunity must be strictly interpreted." *Pohutski v Allen Park*, 465 Mich 675, 681; 641 NW2d 219 (2002). However, "[t]he Legislature can, and has, abrogated the state's sovereign immunity by enacting legislation consenting to suit." *Progress Mich v Attorney General*, 506 Mich 74, 87; 954 NW2d 475 (2020). Relevant to the instant matter, the Legislature has waived immunity against the state in the text of the material statutes of the ELCRA. See MCL 37.2103(g) (defining an "employer" prohibited from taking certain discriminatory actions under the ELCRA as a "person," including "the state or a political subdivision of the state or an agency of the state"); see also MCL 37.2801(2) (stating, "[a]n action commenced pursuant to subsection (1) may be brought in the circuit court for the county where the alleged violation occurred, or for the county where the person against whom the civil complaint is filed resides or has his principal place of business").

The primary issue presented in this case is whether MCL 600.6431(1), the one-year notice provision in the COCA, or MCL 600.6431(4), the six-month notice provision in the COCA, apply to plaintiff's ELCRA claims. MCL 600.6431 provides in pertinent part:

(1) Except as otherwise provided in this section, a claim may not be maintained against this state unless the claimant, within 1 year after the claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against this state or any of its departments, commissions, boards, institutions, arms, or agencies.

* * *

(4) For a claim against this state for property damage or personal injuries, the claimant shall file the claim or notice under subsection (1) with the clerk of the court of claims within 6 months after the event that gives rise to the claim.

Defendants first contend that our Supreme Court did not "specifically and explicitly" hold in *Christie* that the one-year notice provision was applicable to all claims brought under the ELCRA. Defendants argue, "Rather, *Christie* examined solely whether the notice provisions in the [COCA] apply to claims against the state initiated in circuit court," rendering its reference to MCL 600.6431(1) dicta.

A "rule of law" is a "substantive legal principle," according to Black's Law Dictionary (11th ed.). The rule of law typically justifies the "holding" in a case, which is defined as a "court's determination of a matter of law pivotal to its decision." *Freed v Thomas*, 976 F3d 729, 738 (CA 6, 2020). In contrast, our Supreme Court has described "dicta" as "[s]tatements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand" that "lack the force of an adjudication." *Wold Architects & Engineers v Strat*, 474 Mich. 223, 232 n 3; 713 NW2d 750 (2006) (quotation marks and citations omitted). In other words, dicta is not necessary to the determination of the rule of law announced in an opinion. [*Occupational Safety & Health Admin v Yoder Family Farm*, 343 Mich App 77, 85-86; 996 NW2d 808 (2022).]

In *Christie*, our Supreme Court addressed "the question of whether MCL 600.6431, a notice provision contained in the [the COCA], applies to all claims filed against the state, or only to those claims filed against state defendants in the Court of Claims." *Christie*, 511 Mich at 39. The *Christie* Court determined, "[T]he overall structure and history of the COCA supports the same conclusion reached by reading the plain language of MCL 600.6431: except as explicitly exempted in MCL 600.6431(5), *all* claims against the state are subject to MCL 600.6431(1)'s notice requirements . . . ." *Id*. at 63 (emphasis added). The *Christie* Court reiterated, "The only exception to the notice requirements expressed in MCL 600.6431 is . . .found in MCL 600.6431(5)." *Id*. at 53. Subsection (5) provides that "[t]his section does not apply to a claim for compensation under the wrongful imprisonment compensation act . . . ." MCL 600.6431(5). Our Supreme Court concluded that the plaintiff, who advanced age and disability discrimination claims in violation of the ELCRA in the circuit court, was barred from pursuing her action against the state defendant because she failed to comply with MCL 600.6431(1). *Christie*, 511 Mich at 43, 64-65.

-4-

Despite defendants' assertions to the contrary, our Supreme Court's examination of MCL 600.6431 in *Christie*, and its holding that reversal was warranted because "[i]t s undisputed in this case that plaintiff did not comply with MCL 600.6431(1) within one year of the accrual of her claims," underscores that subsection (1), not subsection (4), controls claims advanced under the ELCRA. *Id*. at 64-65. The *Christie* Court explained that "MCL 600.6431(1)'s notice requirements ensure that the proper state entity learns about a potential claim, can prepare for litigation, and can create reserves to cover potential liability." *Id*. at 63. Although it did not expressly address MCL 600.6431(4), the Court advanced that MCL 600.6431(5) operated as an exception to the notice requirement. *Id*. at 53. Moreover, much like *Christie* itself, our appellate courts have consistently applied MCL 600.6431(1) to determine whether a plaintiff has timely filed his or her ELCRA claims. See *Flamont v Dep't of Corrections*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 367863); slip op 1-2, 6 (concluding the state defendants were entitled to summary disposition when plaintiff did not comply with the MCL 600.6431(1) notice provision regarding her sex discrimination claims in breach of the ELCRA); see also *Landin v Dep't of Health & Human Servs*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367356), overruled on other grounds in *Hudson v Dept of Corrections*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 367356); slip op at 4-8 (examining whether the plaintiff's nonadherence to MCL 600.6431(1) barred her ELCRA claims considering *Christie*). Indeed, there is not a single binding, published case holding that ELCRA claims qualify as "personal injury" claims, such that MCL 600.6431(4) governs the notice requirements.

We note, however, that this Court has recently addressed the significance of the differing notice provisions in MCL 600.6431 in light of the *Christie* decision. *St Juliana v State Police*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 370427). This Court explained:

> With respect to the two different timing requirements for notice in subsections (1) and (4) of MCL 600.6431, our Supreme Court has explained that "[s]ubsection (1) sets forth the general notice required for a party to bring a lawsuit against the state," while what is now subsection (4) "merely reduces the otherwise applicable one-year deadline to six months." Thus, subsection (4) constitutes "a subset of the general rules articulated in subsection (1), and those general rules and requirements articulated in subsection (1)—including the bar-to-claims language—continue to apply to all claims brought against the state unless modified by the later-stated specific rules." [*Id*. at ___; slip op at 5 (citations omitted).]

The Court then applied MCL 600.6431(4) to determine whether the plaintiff's wrongful-death claim was subject to dismissal for her failure to file a notice of intention within six months of the event giving rise to the claim opining, "Here, it is undisputed that plaintiff's claim is predicated on a personal injury for purposes of MCL 600.6431(4) that occurred on November 30, 2021," namely, a school shooting. *Id*. at ___; slip op at 1-2, 5. Thus, notwithstanding our Court's holding in *Christie*, certain types of claims appear to remain subject to the stricter notice requirements set forth in subsection (4).

But the context in which this Court has examined whether parties complied with MCL 600.6431(4) has broadly involved claims premised on some sort of physical harm. See *Mays v Governor of Michigan*, 506 Mich 157, 182-186; 954 NW2d 139 (2020) (opining that the MCL 600.6431(3) notice requirement was to pertinent to the plaintiffs' claims because the plaintiffs

alleged they suffered physical harm and property damage due to their exposure to the Flint water); see also *Chisholm v State Police*, 347 Mich App 646, 652-656; 16 NW3d 563 (2023) (examining whether the plaintiff adhered to the notice requirements under MCL 600.6431(4) when he advanced a tort claim under MCL 691.1405, the motor vehicle exception to the governmental tort liability act, due to injuries arising from a car accident); *Pike v North Mich Univ*, 327 Mich App 683, 687-688, 692; 935 NW2d 86 (2019) (noting the COCA "requires notice within six months of the injury-causing incident," considering the plaintiff suffered harm because of a fall from a rock-climbing wall). This comports with how our appellate courts have traditionally addressed personal injury claims against the state, as the term "personal injury" is not defined in the COCA. See *Jordan v Dep't of Health & Human Servs*, 510 Mich 369, 376; 987 NW2d 119 (2022) (explaining that for a plaintiff to recover under the Michigan Worker's Disability Compensation Act, a plaintiff must establish, in part, that he or she suffered from a personal injury or work-related disease); see also *West v Dep't of Natural Resources*, 333 Mich App 186, 188; 963 NW2d 602 (2020) (characterizing the underlying matter as a "personal-injury action" because the plaintiffs were injured during a motor vehicle accident allegedly involving state-owned snowmobiles). The circumstances cited bear little resemblance to the action at issue in this case—plaintiff's nonreappointment, which prompted her to file the present suit—or to the usual events giving rise to an employment discrimination claim in violation of the ELCRA.

Defendants further argue that the plain and ordinary meaning of "personal injury" in relation to the COCA indicates that ELCRA claims constitute "personal injury" claims, on the basis of the type of harm alleged and the nature of damages sought. Notably, the Revised Judicature Act (RJA), MCL 600.101 *et seq.*, which encompasses the COCA, states, " 'Personal injury' means bodily harm, sickness, disease, death, or emotional harm resulting from bodily harm," MCL 600.6301(b). Our Supreme Court has opined that "it is notable that the COCA is a chapter of the [RJA], which broadly applies, in at least some manner, to all claims and demands against the state," and it was "unsurprising that a notice provision placed within a broader set of rules governing civil litigation might need to be consulted when proceeding under an act like the ELCRA . . . ." *Christie*, 511 Mich at 62; see also *Chisholm*, 347 Mich App at 654 (stating, "A claim brought pursuant to an exception to governmental immunity must be brought in the manner provided in the [RJA]"). It follows that any notice requirements imposed should conform to the manner in which the overarching statutory framework defines "personal injury." Additionally, this Court has expressed, "Although personal injury as defined in MCL 600.6301 expressly applies only to chapter 63 of the RJA, we conclude that this definition of 'personal injury' best reflects the plain meaning of the phrase as it is used in MCL 600.1641," another section of the RJA. *Provider Creditors Comm v United American Health Care Corp*, 275 Mich App 90; 738 NW2d 770 (2007), overruled on other grounds in *Angelucci v Dart Props Inc*, 301 Mich App 209; 836 NW2d 219 (2013). The foregoing supports the conclusion that the "personal injuries" contemplated in MCL 600.6431(4), and thus the resulting claims subject to the six-month notice provision, are those involving physical harm, which is not implicated here.

Ultimately, we hold that the one-year notice provision iterated under MCL 600.6431(1), rather than the six-month notice provision in MCL 600.6431(4), govern plaintiff's ELCRA claims. Accordingly, because plaintiff's claims accrued on November 8, 2022 when she received a notice

of nonreappointment,[3] and she filed her notice of intention within a year of accrual on November 7, 2023, her claims were not barred by governmental immunity, and the Court of Claims properly denied defendants' motion for summary disposition on plaintiff's age and sex discrimination claims in violation of the ELCRA.

Affirmed.

/s/ Anica Letica
/s/ Michelle M. Rick
/s/ Mariam S. Bazzi

---

[3] While plaintiff contends that there were several adverse employment actions that transpired "within the shorter six-month notice period of MCL 600.6431(4)," it is evident that the essential "wrong" against plaintiff was her nonreappointment, and the subsequent events did not, on their own, constitute employment discrimination. See *Mays*, 506 Mich at 182 (stating, "For purposes of statutory limitations periods, our Legislature has stated that a claim accrues 'at the time the wrong upon which the claim is based was done,' MCL 600.5827," and that, "A claim does not accrue until each element of the cause of action, including some form of damages, exists"). Further, the alleged harm arising from the later events was a direct consequence of her nonreappointment and discharge from her directorship positions, such that the continuing wrong doctrine is inapplicable. See *Blazer Foods, Inc v Rest Props, Inc*, 259 Mich App 241, 246; 673 NW2d 805 (2003) (providing, "In order to recover under this doctrine, the plaintiff must establish a 'continuing wrong' by showing 'continual tortious acts, not by continual harmful effects from an original completed act' ") (citations omitted). Additionally, we decline to resolve any open questions concerning the distinctions between "accrued" in MCL 600.6431(1) and "the event that gives rise to the claim" in MCL 600.6431(4), as identified by our Supreme Court in *Bauserman v Unemployment Ins Agency*, 503 Mich 169, 184 n 10; 931 NW2d 539 (2019), because we determined that MCL 600.6431(1) solely governed plaintiff's ELCRA claims.